PATRICK FITZPATRICK *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.    March 6, 1924. — May 21, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & CARROLL, JJ.

*Negligence*, Contributory, In use of highway.

At the trial of an action against a street railway company for personal
injuries, the evidence in its aspect most favorable to the plaintiff
tended to show that the plaintiff, standing at the curb of a street in a
city on which were double tracks of the defendant, saw a street car
approaching on the nearer track and about three hundred feet or more
from him; that he then looked in the opposite direction and saw a street
car approaching on the farther track between one hundred and one
hundred fifty feet from him; that he, desiring to take the car on the
farther track, started to walk across the street; that, when he reached
the nearer track, he looked again and saw the car approaching thereon
about two hundred feet away; that he then crossed the nearer track and
by that time the front end of the car on the farther track, which he was
intending to take, was opposite him and moving slowly; that he waited
for that car to pass and thought it was going to stop at an adjacent
white post; that he then heard a noise and, turning around, saw the car
on the track upon which he stood within twenty feet of him and moving
fast; that, as soon as he saw that that car was close to him, he started
to run around the rear of the car in front of him to save himself, but was
caught between the cars and was thrown down; that there was no
vehicle around that obstructed his view; and that the car approaching
on the nearer track was going at a speed of about twenty-five miles
an hour in violation of a city ordinance. *Held*, that

(1) The only reasonable inference that could be drawn from the
evidence required a finding that lack of due care on the part of the
plaintiff contributed to his injury;

(2) The plaintiff could not invoke the doctrine of sudden peril to
relieve himself from consequences resulting from the position into
which he had put himself through his own negligence;

(3) While the plaintiff might rely somewhat upon the belief that
neither motorman would negligently operate his car and thereby injure
him, he was not justified in abandoning all care for his safety;

(4) Judgment should be entered for the defendent.

TORT for personal injuries alleged to have been received
when the plaintiff was run into by a street car, operated by
the defendant, as he was attempting to cross Broadway in
that part of Boston called South Boston. Writ dated April
12, 1921.

In the Superior Court, the action was tried before *O'Connell*, J. Material evidence is described in the opinion. The defendant moved for a verdict in its favor. The motion was denied. There was a verdict for the plaintiff in the sum of $12,498.44, which was afterwards reduced by order of the judge and upon a remittitur filed by the plaintiff, to $8,000. The defendant alleged exceptions.

*G. Hoague*, for the defendant.

*F. J. Daggett*, (*J. T. Cassidy* with him,) for the plaintiff.

CROSBY, J. The plaintiff testified that he walked up the left side of A Street to Broadway intending to take a car going towards City Point, the regular stopping place of which was at a white pole about opposite the junction of the two streets; that as he got to the curbing on Broadway he saw a car coming from City Point and about three hundred feet or more away from him; that he looked in the opposite direction and saw a car coming towards City Point between one hundred and one hundred fifty feet away; that he then started to walk across; that when he reached the inbound track he looked again and saw the car coming from City Point about two hundred feet away; that he crossed the inbound track, and by that time the front end of the outbound car was opposite him, moving slowly, and he waited for it to pass; that he thought it was going to stop at the post; that he heard a noise and turning around saw the other car within twenty feet of him and coming fast; that as soon as he saw it was so close to him, he started to run around the rear of the car going to City Point to save himself; that he " got just about the steps " and was caught between the two cars and was thrown down. He testified in cross-examination that after seeing the car coming from City Point when it was about two hundred feet away he did not see it again and did not look for it until it was about twenty feet from him; that he could have seen it at any time; that there were no automobiles in front of it and no vehicles around there that obstructed his view; that from the time he got up to the first track until he was struck he did not stop walking except for a second when he saw this car so near him; that when he was stepping across the first track

the front of the City Point car was about in the centre of A Street; that he waited for it to pass; that as it was moving he started to run around the rear of it in the space between the two tracks; that he ran not quite the length of the car. There was evidence that the car from City Point was going at a speed of about twenty-five miles an hour, in violation of c. 40, § 65, of the revised ordinances of the city of Boston, which were in force at the time of the accident.

It is obvious that the only reasonable inference that can be drawn from the evidence most favorable to the plaintiff is that his lack of due care contributed to his injury.  It appears from the undisputed evidence that, from the time he started to cross the street to go to the white post on the opposite side, he had an unobstructed view of the tracks; that there were no vehicles or anything else to distract or require his attention.  These two cars coming toward him were in plain sight from the time he started to cross until he was struck.  He testified that he saw them both, the one coming from City Point first when it was about three hundred feet away and again when about two hundred feet from him, and again just before he was caught between it and the car going in the opposite direction.  As counsel for the plaintiff argues, he was not negligent because he did not look oftener for the approaching cars; his lack of due care arises because, seeing them, he took no precautions for his safety until it was too late.  If, as appears, he deliberately and negligently placed himself in great danger, it is no answer to a charge of carelessness that he was put in a position of sudden peril.  As was said in *Rundgren* v. *Boston & Northern Street Railway*, 201 Mass. 156, " A plaintiff cannot invoke the doctrine of sudden peril to extricate himself from the position into which he has come through his own negligence."  The case is plainly distinguishable from *Lemay* v. *Springfield Street Railway*, 210 Mass. 63.  While he might rely somewhat upon the belief that neither motorman would negligently operate his car and thereby injure him, he was not justified in abandoning all care for his safety.

His expectation that the car going toward City Point would stop at the white post did not justify him in attempting

to cross the track at a time when the car coming from the opposite direction was in plain sight and he must have known that it was about to pass at that place.  Although it could have been found that the inbound car was running at the rate of twenty-five miles an hour in violation of the ordinances, that circumstance has no bearing upon the conduct of the plaintiff; it does not appear that its speed had changed from the time it was first seen by him, nor that he paid any attention to it after he saw it two hundred feet away until it was too late to escape from the perilous position he had placed himself in.  The evidence shows that with full knowledge that the cars were approaching from opposite directions, he walked leisurely across the street without taking any precaution for his safety when he might have escaped injury either by quickening his pace or waiting for the cars to pass. It is manifest that upon his own testimony, by which he is bound, the accident was the result of his lack of due care. The case cannot be distinguished in principle from *Holian* v. *Boston Elevated Railway*, 194 Mass. 74, *Fitzgerald* v. *Boston Elevated Railway*, 194 Mass. 242, *Casey* v. *Boston Elevated Railway*, 197 Mass. 440, *Rundgren* v. *Boston & Northern Street Railway*, *supra*, *Kennedy* v. *Worcester Consolidated Street Railway*, 210 Mass. 132, *Stone* v. *Boston Elevated Railway*, 211 Mass. 365, *Adams* v. *Boston Elevated Railway*, 219 Mass. 515, *Will* v. *Boston Elevated Railway*, 247 Mass. 250, and cases cited.  *O'Callaghan* v. *Boston Elevated Railway*, Mass., *ante*, 43.  It is distinguishable from the following cases relied on by the plaintiff: *Creamer* v. *West End Street Railway*, 156 Mass. 320, *Kelly* v. *Wakefield & Stoneham Street Railway*, 175 Mass. 331, *Hurley* v. *West End Street Railway*, 180 Mass. 370, *Hennessey* v. *Taylor*, 189 Mass. 583, *Hatch* v. *Boston & Northern Street Railway*, 205 Mass. 410, *Salisbury* v. *Boston Elevated Railway*, 239 Mass. 430.

As the defendant's motion for the direction of a verdict in its favor should have been granted, the exceptions must be sustained, and judgment is to be entered for the defendant under G. L. c. 231, § 122.

*So ordered.*