PAULINE KANOPKA vs. BOLESLAW KANOPKA.

First Judicial District, Hartford, January Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 6th—decided April 6th, 1931.

*M. J. Blumenfeld,* with whom, on the brief, was *David R. Woodhouse,* for the appellant (defendant).

*Richard D. O'Connell,* with whom was *Edwin M. Ryan,* for the appellee (plaintiff).

Avery, J. The accident in this case happened on May 15th, 1927, prior to the date when the "guest statute" took effect. The defendant was driving northerly on the Cheshire-Milldale road about ten o'clock on a dark and rainy evening in a closed car, and the plaintiff, who is defendant's wife, was riding in the middle of the rear seat, with a child seated on each side of her. The defendant was proceeding up a grade in a lane of northbound traffic with several cars in front and two cars behind, and while driving at a

dangerous and reckless rate of speed, overtook a car, driving in the same direction, and passed it. While passing this car, he negligently applied his foot brakes, which caused his automobile to skid on the wet road across trolley tracks located east of the road, on private property of the Connecticut Company. The automobile came to a stop, with the rear half between the two rails, and an embankment immediately in front of it. A trolley car was proceeding southerly down grade at this time, and the motorman first saw the automobile of defendant when the latter was in the line of automobiles about two hundred feet away. When the automobile skidded eastward, and came to a stop on the trolley tracks, the trolley car was about thirty feet away. The motorman immediately applied his brakes and reversed with such force as to cause sparks to fly up around the wheels, but the car struck the automobile and injured the plaintiff. The plaintiff was not injured when the automobile skidded onto the tracks. The plaintiff first saw the trolley car coming when it was less than thirty feet away, and did not issue a warning to her husband; it was too late to give any useful warning to her husband. When she first saw the trolley car coming, the automobile had but a moment before skidded violently, and had come to a sudden stop on the tracks, and she was greatly frightened and excited. Any warning which she then could have given would have confused her husband instead of helping him, for he was in the same frightened and excited condition, and could not have backed his car off the tracks in time to avoid being hit.

The foregoing facts were found by the trial court and unless the defendant is entitled to a correction of the finding, the judgment of the court in favor of the plaintiff cannot be successfully attacked. The appeal

of the defendant is based upon a twofold claim; first, that certain facts have been found without evidence; and second, that certain facts should be added to the finding as admitted and undisputed, and if so added, would destroy any logical basis for the conclusion, essential to support the judgment, that the plaintiff was free from contributory negligence.

As to the first contention of the defendant, the findings sought to be eliminated are supported by evidence or are logical and reasonable deductions from facts in evidence, and no change therein, of material consequence, can be made.

The second contention is based upon the proposition that the plaintiff, having testified as a witness in the case, is bound by her own testimony as given; that the court was under a legal duty to find the facts in accordance with that testimony, and had no right to consider the evidence of other witnesses, and, if it believed their testimony, to find the facts in accordance therewith.

To make clear the situation, we refer to the evidence of the plaintiff. It appears that the plaintiff testified through an interpreter, and on direct examination was asked how long the automobile rested on the trolley tracks before it was struck by the trolley car, to which she answered, "I don't know exactly how many minutes, but it was enough, it was enough for a time standing there." She was then asked to explain in her own words exactly what happened, after the car her husband was driving came to rest across the trolley tracks, to which she answered, "We stopped across the tracks; then I look at my left and the right. . . . And after that I looked to the back and I told my husband 'Now take care; be careful, and you may back the car.' . . . And after that I looked again and I saw a light from the left side and I saw that a car is

coming on the track. I didn't holler right away that the car is coming because I didn't want to scare him. I thought that she will not strike us, that she will stop. And she was high speeding and when she came she was making a very noise and I thought she stopped and she struck and maybe she struck in the wheel and bend me on that side, and I lean on the car and caught my both children and I said 'Thank God, that we are alive.' For a time she was standing and after that—and she struck very hard after that; and I felt that it is hit very hard on my head and I fell down. Who took me out from the automobile I don't know, and after that two men took me to the automobile." On cross-examination she was asked how far away the trolley car was when she first saw the light, to which she answered, "I don't know," and afterward said, "When I saw her she was far away."

Other witnesses testified, including the motorman of the trolley car, who stated that he was coming down grade and first saw the Kanopka car about two hundred feet away; that when first seen by him, it was in a line of cars proceeding up the hill; that when the trolley car was within about thirty feet of the automobile, the latter started to skid off the road, and skidded in front of the trolley car; and that just as the automobile stopped, the trolley car struck it.

The claim of the defendant is that on her own testimony the plaintiff was guilty of contributory negligence; that, in the exercise of reasonable care, she had time and opportunity to get out of the automobile into a place of safety, after she saw the light of the trolley car, and before the collision and that the trial court had no right to find from the testimony of the other witnesses that the plaintiff had opportunity neither to give any useful warning nor to get out of the automobile in time to avoid injury. The defendant

states this contention in his brief as follows: "When a party testifies to positive and definite facts, which if true, would defeat his right to recover, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony and that he cannot successfully complain if he is non-suited or if the court directs a verdict against him. In other words, a party must stand or fall by his own testimony."

In Massachusetts, since the opinion of Rugg, C. J., in *Sullivan* v. *Boston Elevated Ry. Co.*, 224 Mass. 405, 112 N. E. 1025, it has been repeatedly stated that a party is bound by his own testimony. *Sullivan* v. *Ashfield*, 227 Mass. 24, 116 N. E. 565, 567; *Goodwin* v. *E. B. Nelson Grocery Co.*, 239 Mass. 232, 132 N. E. 51, 52; *Gould* v. *Converse.* 246 Mass. 185, 140 N. E. 785, 786; *Will* v. *Boston Elevated Ry. Co.*, 247 Mass. 250, 142 N. E. 44, 45; *Fitzpatrick* v. *Boston Elevated Ry. Co.*, 249 Mass. 140, 144 N. E. 75, 76. In other states, statements of similar purport have been made. *Fowler* v. *Pleasant Valley Coal Co.*, 16 Utah, 348, 52 Pac. 594, 596; *Virginia R. & P. Co.* v. *Godsey*, 117 Va. 167, 83 S. E. 1072, 1073; *Stearns* v. *Chicago, R. I. & P. Ry. Co.*, 166 Iowa, 566, 148 N. W. 128, 133; *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652, 656; *Steele* v. *Kansas City Southern Ry. Co.*, 265 Mo. 97, 175 S. W. 177, 180; *Wilson* v. *Blair*, 65 Mont. 155, 211 Pac. 289, 294; *Van Meter* v. *Zumwalt*, 35 Idaho, 235, 206 Pac. 507, 508; *Western & A. R. Co.* v. *Evans*, 96 Ga. 481, 23 S. E. 494, 495.

Examination of the authorities makes it clear, however, that even in jurisdictions where this principle is recognized, its application is narrow. Thus, in Massachusetts, in *Whiteacre* v. *Boston Elevated Ry. Co.*,

241 Mass. 163, 165, 134 N. E. 640, the plaintiff, a passenger on a trolley car, and another witness gave differing versions of the events causing the injury. A verdict was directed for the defendant, and the Supreme Judicial Court on appeal, said: "It is assumed that if the accident had occurred as described by the plaintiff the direction of the verdict would have been right. . . . The jury, however, were not bound to accept the plaintiff's version of the way in which the injury happened. Her evidence did not have the effect of an admission that the accident happened as testified by her nor did it estop her from claiming that it happened in a different way. The evidence considered as a whole was open to more than one conclusion and the question of what findings ought to be made upon it was for the jury." In *Hill* v. *West End St. Ry. Co.*, 158 Mass. 458, 459, 33 N. E. 582, it was said: "There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness. Nor, under the same circumstances, is there any reason why, to prove material facts denied by his own testimony, he may not rely on the testimony of a witness called by the adverse party. . . . In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source." In Missouri, where the doctrine is recognized to some extent, it is held that if a party, through ignorance, oversight or mistake, makes statements against his interest, which are not true, the jury are not bound to give conclusive effect to such statements. *Steele* v. *Kansas City Southern Ry. Co.*, 265 Mo. 97, 176 S. W. 177, 180;

*Jennings* v. *Swift & Co.*, 130 Mo. App. 391, 110 S. W. 21, 22. In *Harlow* v. *Leclair*, 82 N. H. 506, 512, 136 Atl. 128, 131, while the Supreme Court of New Hampshire recognizes the existence of the rule to a limited extent, it says: "If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs, and he will not be concluded by his own statement." The court, however, holds that where he testifies to facts with regard to which he has special knowledge, "such as his own motives, purposes or knowledge, or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears," and that "to allow him to contradict his own testimony under these circumstances would not be 'consistent with honesty and good faith.' " The conclusion of the court is: "If a party's mental faculties are undeveloped or impaired, if his comprehension of his testimony is doubtful, if it relates to objective matters about which he may be mistaken, and he is contradicted by other witnesses, or if his statements are inconclusive, the effect of his testimony may be for the jury." In the Federal Court, *Larson, Jr., Co.* v. *Wrigley, Jr., Co.*, 166 C. C. A. 14, 253 Fed. 914, 917, 918, the matter is formulated in the following manner: "Undoubtedly a litigant has no cause for complaint if the court accepts his solemn and sworn admissions in pleadings and testimony as true. But we must reject the contention that his adversary has the right to compel the court to do so. . . . In such a situation, the rule, in our judgment, is this: in a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testi-

mony, unless the court can find an absolute demonstration from other evidence in the case or from facts within judicial notice, like the laws of physics, etc., that under no circumstances could the averments and admissions be true." The Supreme Court of Vermont takes the position that evidence given by a party cannot be considered with the force of a formal judicial admission, and, therefore, the party is not concluded, as a matter of law, by statements he may make in testifying as a witness. *Wiley* v. *Rutland Railroad Co.*, 86 Vt. 504, 86 Atl. 808, 810.

In 5 Wigmore on Evidence (2d Ed.) § 2588, the author states: "An express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. This is what is commonly termed a solemn—*i. e.* ceremonial or formal—or *judicial admission, or stipulation.* It is, in truth, a substitute for evidence, in that it does away with the need for evidence. The judicial admission is sharply marked off from the ordinary quasi-admission—which indeed does not deserve to bear the same name. The latter is merely an item of evidence, available against the party on the same theory on which a self-contradiction is available against a witness. . . . It is enough to note that, as to the effect, the latter is not conclusive; while as to its form, it may be either implied or express, and need not be either written or made in open court." And in § 2597, the same author observes: "The doctrine of judicial admissions has a large future before it, if judges will but use it adequately. In the first place, the judge should apply it to all *informal,* as well as formal, admissions by

counsel during trial. In the next place, the judge should freely call upon counsel to state whether a fact is in good faith disputed, i. e. should *require* admissions to be made, when it seems probable that a fact is not actually disputed. By this method, the presentation of evidence will be confined to those matters of fact alone which the parties do dispute."

The practice in this state conforms to the views expressed by Professor Wigmore. A judicial admission may be made by a party as well as by his counsel. If a party, as a witness, unequivocally concedes a fact, such concession for the purposes of the trial, has the force of a judicial admission, and a party is bound thereby unless the court, in its reasonable discretion, allows the concession to be later withdrawn, explained, or modified, if it appears to have been made by improvidence or mistake. *State* v. *Marx,* 78 Conn. 18, 27, 60 Atl. 690; *State* v. *Chapman,* 103 Conn. 453, 478, 130 Atl. 899. Unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, the testimony of a party to a fact is ordinarily no more conclusive upon him than the evidence given by any other witness; and it is the duty of the court or jury to determine the fact not alone from the testimony given by the party but from all the evidence in the case. *Lampe* v. *Simpson,* 106 Conn. 356, 358, 138 Atl. 141; *Connelly* v. *Connecticut Co.,* 107 Conn. 236, 239, 140 Atl. 121; *Clark* v. *Torrington,* 79 Conn. 42, 45, 63 Atl. 667.

In the instant case, the court has found that the plaintiff was greatly excited and confused at the time of the accident. She was struck on the head and rendered unconscious by the impact. She testified at the trial through an interpreter. It is obvious from her testimony that her powers of accurate description were as limited as her knowledge of English. In eliciting

her testimony, there was not the strictest observance of the technical rules of evidence, "but this was inevitable in view of the limited understanding" of the witness. *Carrano* v. *Hutt,* 93 Conn. 106, 111, 105 Atl. 323. Under the circumstances, there is no basis for defendant's claim, that the testimony of the plaintiff should be taken to have had the effect of an express waiver or judicial admission by which she was conclusively bound, and that the trial court was thereby legally compelled to find the facts from her confused, uncertain, and, in some respects, contradictory evidence, and was thereby precluded from considering the testimony of other witnesses and deciding the case in accordance with the actual facts as they might appear from all the evidence produced.

There is no error.

In this opinion the other judges concurred.