DOMENIC McBRIDE *vs.* MIDDLESEX & BOSTON STREET RAILWAY COMPANY.

Middlesex.   April 14, 1931. — June 1, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Negligence,* Street railway, In use of way, Contributory.

At the trial of an action of tort against a street railway company for personal injuries sustained when the plaintiff, a pedestrian, was run into by a street car of the defendant, it appeared that the defendant's street railway was outside of the travelled way and on the east side of a city street running north and south; that the street was thirty-six feet wide; that the plaintiff had approached the defendant's tracks on a street that entered the first street from the east; that the car which struck the plaintiff approached the intersection from the north, and that the intersection was a "blind corner" for vehicles approaching from the south. There was evidence that the plaintiff had reached a point about fifteen feet from the nearer rail of the track when he saw the car approaching from his right about one hundred twenty-five to one hundred fifty feet distant; that he proceeded at an ordinary walk to cross the tracks when he saw an automobile approaching from the south about two hundred feet away; that he was about to step forward off the track onto the street when the automobile seemed to increase its speed and turn in toward the electric car as if it was going to run right into it; that he stopped and was struck by the street car and injured; that he thought the street car was coming at an ordinary rate of speed; that he would have had "plenty of time" to get out of the way of the car if he "hadn't been obstructed by the automobile"; that he did not "look for the car again" after he first saw it, though he "had plenty of chance"; that he was listening because he knew a street car was coming, but he did not hear a gong ring; that the accident happened at about 7:30 P.M. on December 24, and it was raining, sleeting and misty. According to the testimony, the place where the car stopped after striking the plaintiff was from fifty feet to one hundred twenty feet from the intersecting street and the place where the plain-

tiff was found was from "forty or fifty feet" to ninety feet from that intersection. The judge denied a motion that a verdict be ordered for the defendant. There was a verdict for the plaintiff. *Held*, that

(1) A finding was warranted that the gong of the street car was not sounded; and it could not be ruled that sounding the gong as the street car approached the intersecting street might not have affected the plaintiff's conduct;

(2) A finding was warranted that the motorman, as he approached the intersection, was not taking proper precautions to prevent injury to the plaintiff, a pedestrian;

(3) It could not properly be ruled as a matter of law that the plaintiff was guilty of contributory negligence: the emergency which caused him to step back was not created by his own negligence.

TORT for personal injuries. Writ dated February 8, 1927.

In the Superior Court, the action was tried before *Pinanski*, J. Material evidence is stated in the opinion. The judge denied a motion that a verdict be ordered for the defendant. There was a verdict for the plaintiff in the sum of $1,778. The defendant alleged exceptions.

*P. F. Drew*, (*F. B. Turner* with him,) for the defendant.
*J. P. Brennan*, for the plaintiff.

FIELD, J. This is an action of tort for negligence, brought in the Superior Court to recover damages for personal injuries received by the plaintiff, a pedestrian, as a result of his being struck by one of the defendant's electric cars. The defendant's motion for a directed verdict was denied, subject to its exception, and there was a verdict for the plaintiff.

There was no error in the denial of the defendant's motion for a directed verdict.

The evidence that the plaintiff was struck by one of the defendant's electric cars and injured was not contradicted. The accident occurred about 7:30 P.M. on December 24, 1926, on South Street, in Waltham, which runs north and south, at or near the place at which Highland Street enters it from the east. The defendant's track was on the east side of South Street, outside the travelled part of the way. There was then no sidewalk on that side of the street. South Street was thirty-six feet wide. There was an electric street light where Highland Street entered South Street,

and a white-banded pole marking a car stop at the corner
of these streets north of Highland Street.   On this corner
there was a vacant lot.   South of Highland Street "there
is a hill and considerable trees and shrubbery and it is a
blind corner for anything coming" from the south.   The
defendant's car was going south.

The evidence introduced by the plaintiff and that intro-
duced by the defendant as to the circumstances of the acci-
dent differed widely.   According to the plaintiff's own testi-
mony, corroborated to some extent by other witnesses, it
happened as follows: The plaintiff with his brother was
walking on the sidewalk on the south side of Highland
Street toward South Street, and had reached a point about
fifteen feet from the nearer rail of the track when he saw
the car approaching from his right about one hundred
twenty-five to one hundred fifty feet distant.   He walked
forward at "an ordinary walk, two or three miles an hour,"
and as he "was about to go across the tracks . . . saw an
automobile about two hundred feet away on . . . [his]
left coming from" the south.   As he "was about to step
off the track on to the street, this automobile . . . seemed
to increase its speed and turned in towards the railroad
quickly, and . . . [he] stopped" and was struck by the
car and injured.   The "automobile headed right toward
the electric car as if it was going to run right into it."   He
"thought" that the car "was coming at an ordinary rate
of speed" and that the automobile was "going" "probably
thirty-five miles an hour."   He would have had "plenty of
time" to get out of the way of the car if he "hadn't been
obstructed by the automobile."   He "could have been on
the other side of the street before the car came."   The
street light was lighted and the car was lighted up when
the plaintiff saw it.   He did not "look for the car again"
after he first saw it, though he "had plenty of chance."
He was "listening because . . . [he] knew the car was
coming," but he "did not hear it."   He did not "hear a
gong ring."   If, as he approached the first rail of the track,
he had "looked and seen that the car was getting close"
to him he "could have stopped and let the car pass by."

It was a "bad night" — "raining, sleeting, misty." There "was no other traffic on the street except . . . [the] automobile and the electric car."

The plaintiff's brother testified that he was walking with the plaintiff and was struck by the car. He saw the automobile coming from the south and another coming from behind the electric car, and these "automobiles passed" as the witness and the plaintiff "were about to proceed to cross South Street." He saw the car coming "about one hundred twenty-five feet away," and "was watching the electric car all the time; it was still proceeding toward" him. The testimony as to the place where the car stopped after striking the plaintiff varied from fifty feet to one hundred twenty feet from Highland Street and the testimony as to the place where the plaintiff was found varied from "forty or fifty feet" to ninety feet from Highland Street. A witness for the plaintiff testified that he "noticed blood on the ground starting about ten or fifteen feet from Highland Street and ending about sixty or seventy feet from the corner." The defendant's motorman testified that on "a night such as that the headlight on the car would show about eight or ten feet" and that he "did not see the men until . . . [he] was within six or seven feet of them." He saw the automobile coming from the south. There was evidence from which it could have been found that the car had stopped at Highland Street and had started up slowly and was proceeding at a speed of about ten miles an hour, that the motorman saw the plaintiff and that the car struck the plaintiff after it had passed Highland Street.

We cannot say there was no evidence that the defendant was negligent. According to the testimony of the plaintiff and his brother, the plaintiff was a traveller on a public way. As such he had a right to cross the defendant's track where he was struck. *Mullen* v. *Boston Elevated Railway,* 209 Mass. 79, 80. *Crowell* v. *Boston Elevated Railway,* 234 Mass. 393, 396. "In the concurrent use of the street" by cars and pedestrians, "the defendant was bound to take proper precautions to avoid injury to travellers." *Luca-*

*relli* v. *Boston Elevated Railway*, 213 Mass. 454, 455. The jury could have found, from the plaintiff's testimony, that he was listening but did not hear the gong, that it was not sounded (*Menard* v. *Boston & Maine Railroad*, 150 Mass. 386, *Harrington* v. *Boston Elevated Railway*, 214 Mass. 563, 566), and we cannot say that sounding the gong as the car approached Highland Street might not have affected the plaintiff's conduct. Compare *Adams* v. *Boston Elevated Railway*, 219 Mass. 515, 519. The jury could have concluded from the evidence that, under the conditions affecting the visibility from the car of pedestrians crossing the track where Highland Street entered South Street, the motorman in proceeding across Highland Street, without sounding the gong, at the speed and lack of control indicated by the place where the car stopped and by the place where the plaintiff was found, was not taking proper precautions to prevent injuries to such pedestrians. *Albee* v. *Boston Elevated Railway*, 209 Mass. 6. *Scherer* v. *Boston Elevated Railway*, 238 Mass. 367. *Daris* v. *Middlesex & Boston Street Railway*, 241 Mass. 580, 581–582.

It could not have been ruled as matter of law that the defendant proved that the plaintiff was negligent. On his testimony and that of his brother, when they had reached the farther rail they faced the dilemma of stepping in front of the approaching automobile or remaining in the path of the approaching car. When confronting this emergency the plaintiff did not necessarily make the wrong choice. Even after the event it does not appear conclusively that his choice then made was mistaken. In this respect the case is stronger for the plaintiff than *Austin* v. *Eastern Massachusetts Street Railway*, 269 Mass. 420, 424. A plaintiff, however, cannot justify conduct by reason of an emergency created through his fault. He "cannot invoke the doctrine of sudden peril to extricate himself from the position into which he has come through his own negligence." *Rundgren* v. *Boston & Northern Street Railway*, 201 Mass. 156, 158. See also *Fitzpatrick* v. *Boston Elevated Railway*, 249 Mass. 140, 142. But in this case it could not have been

ruled as matter of law that the evidence binding upon the plaintiff showed that the emergency was created by his negligence. It could have been found that the plaintiff had ample time in which to cross the track ahead of the approaching car but for the obstruction of the approaching automobile. Moreover, he was entitled to rely to some extent on the expectation that the motorman would not fail to take such precautions to prevent injuries to pedestrians crossing the track by reducing speed, warning pedestrians that speed would be maintained, or otherwise, as traffic conditions required. See *Harrington* v. *Cudahy Packing Co.* 273 Mass. 15, 18. Under these circumstances the plaintiff's testimony in regard to the approaching automobile — the only traffic on South Street, except the defendant's electric car, according to his testimony, though his brother testified that there was another automobile coming from the north — did not require the conclusion that he was negligent in attempting to cross the track without looking again at the approaching car. This was a question of fact for the jury. See *Albee* v. *Boston Elevated Railway,* 209 Mass. 6; *Lunderkin* v. *Boston Elevated Railway,* 211 Mass. 144; *O'Toole* v. *Boston Elevated Railway,* 211 Mass. 517; *Thompson* v. *Boston Elevated Railway,* 227 Mass. 407; *Scherer* v. *Boston Elevated Railway,* 238 Mass. 367.

*Exceptions overruled.*