**Florence HECKER, Respondent,**

v.

**C. Monville SCHWARTZ and Lloyd E. Bennett, Co-Executors of the Estate of Edward Longinette, Deceased, Appellants,**
and
**Kent Gage, Defendant.**

**No. 52833.**

Supreme Court of Missouri,
Division No. 2.

March 11, 1968.

As Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court En Banc Denied April 8, 1968.

Kappel & Neill and Robert E. Staed, St. Louis, for respondent.

F. X. Cleary, Paul S. Brown, Daniel T. Rabbitt, Jr., Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellants Schwartz and Bennett.

DONNELLY, Judge.

In this jury-tried action for damages resulting from a vehicular collision in the City of St. Louis, which occurred at approximately 4:50 p. m. on December 8, 1963, plaintiff, Florence Hecker, received a verdict in the amount of $50,000 against defendant executors of Edward Longinette, deceased. The jury returned a verdict in favor of defendant Gage. The executors appealed. This opinion is written on reassignment.

The collision occurred on the Grand Avenue viaduct, which extends north and south, and which, at the time of the collision, was covered with a solid sheet of ice and was slippery. The viaduct is six lanes wide, three lanes northbound, and three lanes southbound, with a painted center line. The vehicles involved were driven by Edward Longinette, traveling north, and Kent Gage, traveling south. Plaintiff was

a passenger in the Longinette car, riding in the right rear seat. Longinette's wife was riding in the right front seat. Mrs. Eleanore Welsh was riding in the left rear seat. Longinette and his wife died after the collision and before the trial. The collision occurred near the center line of the viaduct. The investigating police officer was unable to determine the point of impact.

Appellants contend (1) that plaintiff failed to make a submissible case against Longinette's executors, and (2) that Instruction No. 3 was prejudicially erroneous. We reverse and remand.

Plaintiff testified, in part, as follows:

"Q Mrs. Hecker, I am not sure I am making myself clear. Just prior to the collision, did you see the Gage automobile?

"A Come over, you mean? Oh, yes, yes.

"Q How far away from you was it when you first saw it?

"A About two car lengths.

"Q Two car lengths. A Approximately thirty feet.

"Q You were travelling which way?

"A We were travelling north.

"Q On the viaduct? A On the viaduct.

"Q What was your rate of speed as you were travelling across the viaduct?

"A I would estimate the speed at thirty miles an hour.

"Q Did you cry out anything when you saw this car?

"A Yes, I did. When I seen this car I said, 'Oh, my God, look at that silly driver. He is coming right for us.'

\*　　\*　　\*　　\*　　\*　　\*

"Q \* \* \* What was the position of your car with reference to the center line just prior to the collision?

"A He [Longinette] was about, from the middle line, the center line of Grand Avenue, two feet.

"Q Had you been travelling in the same lane? A Yes.

"Q About two feet from the center line of Grand Avenue?

"A That is correct.

\*　　\*　　\*　　\*　　\*　　\*

"Q You could see out the windshield as well as the windows on each side? A Yes, that's right.

"Q That is a correct statement? A Yes, it is.

"Q You, of course, know what the center line of a street is, don't you? A Yes, I do.

"Q There was such a line painted on Grand Avenue or Grand Boulevard, wasn't there? A There was, yes sir.

"Q Do you know whether it was a single line or double line?

"A Well, I am pretty sure—I think it was a double line there, but I don't know for sure. I know there was a white line going down there. I am positive of that.

"Q That was the line that you felt marked the center line of the bridge? A Yes.

"Q Of Grand Avenue? A Yes, that's right.

\*　　\*　　\*　　\*　　\*　　\*

"Q \* \* \* Well, was Mr. Longinette driving to the right or to the east of the center line of Grand Avenue, Mrs. Hecker?

"A Of the center line?

"Q Yes? A He was driving to the right of it.

\*　　\*　　\*　　\*　　\*　　\*

"Q My question is, did he [Longinette] at any time before this collision occurred ever cross to the wrong side of the center line? A Not that I know of.

"Q While you were there? A No.

"Q While you were looking? A No, he did not.

"Q He was always on his right side of the center line?

"A Up until the impact.

"Q Then after the impact, you don't know which way—

"A (Interrupting) I don't know what happened.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q &ast; &ast; &ast; Mrs. Hecker, did the Gage automobile cross the center line and come onto your side of the street?

"A Yes, it did.

"Q Is there any question about that in your mind?

"A No, there isn't because it came right across."

In Smith v. Siercks, Mo.Sup., 277 S.W. 2d 521, at 525, this Court said: "The courts of this State frequently have been called upon to consider the effect of testimony of a party such as was given by plaintiff in this case and to determine whether it amounts to a judicial admission binding upon the party, thereby depriving him of the benefit of the favorable testimony of &ast; &ast; &ast; other witnesses. The law has been tersely stated by Bour, C., in the case of Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747, 748 [1–4]: 'But a party's testimony on the stand as a witness may be of such a nature as to have the effect of a judicial admission which not only relieves the opponent from adducing evidence, but precludes the party himself from disputing it, either by his own testimony or by other witnesses. Wigmore, Evidence, Sec. 2495a (3d Ed.). Thus, if a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the con-

trary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absence of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, whether given by himself, Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S.W. 177, by his adversary's witnesses, Elkin v. St. Louis Public Service Co., 335 Mo. 951, 958, 74 S.W.2d 600, or by his own witnesses. Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618, 621, and cases cited. Where, however, the testimony of a party is not a positive statement of fact within his own knowledge, but is a mere estimate or opinion, it does not have the effect of a judicial admission. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is subject to inexactness of observation and memory. See Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619, a leading case. Thus a party is not conclusively bound by his mere estimate of time, speed or distance, or the position of an automobile or train at the time of an accident. His testimony in regard to such matters does not preclude him from relying upon the more favorable testimony of other witnesses in the case, unless the testimony of the other witnesses is inconsistent with his theory of the case or contrary to physical facts. &ast; &ast; &ast;'"

We believe that under plaintiff's testimony she is conclusively bound to a theory of recovery based upon the fact that the collision occurred as Longinette drove in his half of the roadway and Gage drove in the wrong half of the roadway. Her testimony in this regard consists of positive statements of fact, not estimates nor expressions of opinion. She did not attempt to explain her testimony. Her testimony amounts to a judicial admission that the collision occurred in Longinette's half of the roadway.

Plaintiff's Instruction No. 3 reads as follows: "Your verdict must be for plaintiff FLORENCE HECKER and against defendants C. MONVILLE SCHWARTZ and LLOYD E. BENNETT, Co-executors of the Estate of EDWARD LONGINETTE, if you believe: First. EDWARD LONGINETTE either: failed to keep a careful lookout or drove at an excessive speed, or drove too close to the center line of Grand Avenue, and Second. EDWARD LONGINETTE'S conduct, in any one or more of the respects submitted in paragraph First, was negligent, and Third. Such negligence directly combined with the acts of defendant KENT GAGE to cause damage to plaintiff."

 We believe plaintiff made a submissible case for the jury against Longinette's executors on Longinette's failure to keep a careful lookout. "In determining whether or not a submissible case was made for the jury on this issue, we must consider the evidence from a viewpoint most favorable to the plaintiff and give plaintiff the benefit of every reasonable favorable inference which the evidence tends to support." Berry v. Harmon, Mo.Sup., 329 S.W.2d 784, 789.

Plaintiff testified, in part, as follows:

"Q When you first saw it [the Gage car], it was already in this movement coming towards you from the west, from your left to your right, from west to east? That is when you first saw it?

"A When I first seen the car it was turning east.

"Q You didn't see it at the time it was coming south towards you? A No.

"Q The first time you saw it was in this last movement from right to left, from west to east. Is that correct? A Yes.

 * * * * * *

"Q And at that time when you saw this car in this direction (indicating), tell the jury which way Mr. Longinette was looking?

"A Well, he had been talking to his wife; they were in conversation; he was looking to his right."

In Riley v. Young, Mo.App., 218 S.W.2d 805, at 808, the Court said: "There is no doubt of the duty of the operator of a motor vehicle to keep a careful or vigilant watch ahead for other persons or vehicles on the highway; and for a motorist to fulfill this duty he must look in such an observant manner as to enable him to see and discover such conditions as one in the exercise of the highest degree of care for the safety of himself and others would be expected to see under like or similar circumstances."

The evidence, considered favorably to plaintiff, shows that Longinette failed to keep his eyes on the roadway. Under these facts, it could be found that Longinette could have avoided the collision if he had kept a careful lookout. We cannot hold as a matter of law that plaintiff failed to make a submissible case.

 We believe that the giving of Instruction No. 3 was prejudicial error because only by resorting to speculation and conjecture outside of and beyond the scope of the evidence may it be found that the submitted acts of negligence on the part of Longinette in driving at an excessive rate of speed or too close to the center line proximately caused the collision.

There is evidence that Longinette was driving at an excessive speed on the icy viaduct and that Longinette drove within two feet of the center line. However, there is no substantial evidence to indicate that these acts would have caused a collision had Gage's vehicle not crossed the center line into Longinette's half of the roadway.

A driver of a motor vehicle, who is operating his vehicle in his half of the roadway, may assume that a driver of a vehicle approaching from the opposite direction will operate said vehicle in the other half of the roadway, until he knows, or by the use of the highest degree of care could

know, that the approaching driver cannot or will not do so. See Annotation, 47 A.L. R.2d 6.

Plaintiff, as stated above, is bound to a theory of recovery based upon the fact that the collision occurred as Longinette drove in his half of the roadway and as Gage's vehicle crossed into Longinette's half of the roadway. In these circumstances, Longinette was under no duty to reduce his speed, or to swerve, or to take other evasive action, until he knew, or by the use of the highest degree of care, could have known, that there was a reasonable likelihood of collision. In this case, a submission under MAI No. 17.04 would have been proper.

The judgment is reversed and the cause is remanded for new trial.

All of the Judges concur.