Clarence Fowler and Pearl Fowler, Plaintiffs,

Clarence FOWLER, Plaintiff-Respondent,

v.

Famous ROBINSON, Defendant-Appellant.

No. 33660.

St. Louis Court of Appeals, Missouri.

Feb. 23, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied March 23, 1971.

**6**

Morris, Wuestling & James, Richard C. Wuestling, III, St. Louis, for defendant-appellant.

Marvin S. Wood, Clayton, for plaintiff-respondent.

WEIER, Commissioner.

Clarence Fowler, a pedestrian, sued Famous Robinson, a motorist, for personal injuries. From a verdict and judgment favoring plaintiff and awarding him $10,-000.00, defendant has appealed. Defendant on appeal relies on two points: 1) plaintiff failed to make a submissible humanitarian case; and, 2) the court erred in restricting defendant's final argument regarding the actions of a third party, Gary Plass, being the real cause of the accident.

As to the first point, defendant contends the trial court erred in failing to sustain his motion for directed verdict filed at the close of all the evidence because the evidence failed to establish a basis for recov-

ery upon any theory of liability. Plaintiff counters by asserting that his humanitarian submission on failure to stop or slacken speed was sustained by the evidence. We therefore address ourselves to the evidence to determine from that portion most favorable to the winning party, the plaintiff, whether the jury might have been able to arrive at their verdict without speculation or conjecture. Higgins v. Paul Hardeman, Inc., Mo.App., 457 S.W.2d 943, 944[1].

Clarence Fowler was employed by the City of St. Louis as a toll collector on MacArthur Bridge. At about 1:45 on the morning of October 5, 1967, he was stationed on a raised platform known as a toll island, some 9 inches high, 3 feet 7 inches wide and 37 feet 6 inches long, linearly parallel to the north and south curbs of the vehicular deck of the bridge and so positioned that it was 9 feet 1 inch from the south curb and 16 feet 10 inches from the north curb. Tolls were collected from vehicles by Fowler when they passed this island.

Traffic was light this early morning. The weather was chilly and dry. An automobile approached the toll island from the west, or Missouri side, at a speed estimated by Fowler to be 60 to 80 miles per hour. As it got closer to him it seemed to sway and to veer toward a shelter structure on the south side of the bridge. Seeking a place of safety, Fowler looked to the east, or Illinois side, saw the west-bound automobile driven by the defendant Robinson, and ran straight across toward the north side of the bridge. According to Fowler, he was struck by Robinson's automobile when he was one foot from the north curb.

Since Fowler's account of distance gave rise to the principal issue on appeal, we review the testimony on distance in some detail. First in narrating what he did prior to the collision, Fowler said he observed the car coming from the west at a high speed. It started to sway and appeared to cut toward the shelter. This was where he generally ran to avoid a car "if there's

going to be an accident." When he saw the car approaching from the west, he then looked at the Illinois side and "seen this man (referring to Robinson) one hundred and fifty feet away and that he had plenty of time to get across the bridge." Counsel for defendant interrupted, and objected to the narrative form of the question, which was sustained by the court. A few questions later, on direct examination, after going over the previous narration as to seeing a car coming from the east, a leading question was asked, "And you said it was one hundred and fifty feet away?" Fowler answered, "Yes, sir." Question, "And then you started to run towards the north curb, did you?" Answer, "Yes, sir." In going over the same matter on cross-examination, defendant's counsel asked Fowler what he saw when he looked east. His reply was, "I seen this car about one hundred and fifty feet away, and started to go across to the south (sic) side of the sidewalk from the mound." Repeating, by leading question, "So the last time you saw him he was a hundred and fifty feet away?" Answer, "Yes, sir."

Before plaintiff's case was closed, portions of the deposition of defendant Robinson were read into the evidence, without objection. One portion commenced with the question, "Yes; when you first saw Mr. Fowler, do you know where your car was with reference to, the east end of the island?" Answer, "Maybe fifteen foot." Then followed, "Now, with reference to the island, can you tell me where the impact took place between your car and Fowler?" Answer, "About center, I guess."

In defendant's case, on direct examination, Robinson again testified that he was about 15 or 20 feet from the island when he first saw Fowler.

Other factors of time, speed and distance were established by the testimony of plaintiff and defendant. Robinson's highest speed on the bridge was 20 to 25 miles per hour. He was still travelling at that speed when he saw Fowler right at the island in

the street running. Robinson admitted on deposition read into evidence that he was still going about the same speed when he struck Fowler. Fowler saw only the car and the lights. He frankly admitted he had no estimate of its speed. Further, he never saw the car again after he looked the one time.

As to his running course, Fowler testified he started from the center of the island and ran straight across to the north side about twice as fast as he could walk. Robinson said when he first saw Fowler he was running as fast as he could from a point near the center of the island toward the north more at an angle away from the path of the car. After he struck Fowler, his car travelled 10 to 15 feet before it stopped.

We are not favored with the testimony of any eye witness other than the parties. Gary Plass, the driver of the car coming from the west, was killed when his car struck the concrete abutment at the west end of the island.

Plaintiff requested the court to take judicial notice of the propositions that a factor of 1.46 times speed will produce the correct number of feet travelled per second and that the average walking speed of a pedestrian is 2.9 to 4.4 feet per second.

Defendant's contention on appeal is that this evidence failed to establish any basis for a recovery against defendant on any theory and particularly on plaintiff's theory. The main thrust of his argument is that plaintiff established by positive and unequivocal evidence that defendant's oncoming vehicle was 150 feet away when Fowler started his run of 16 feet 10 inches from the island to the north curb. And further that, based on a running speed of 5.8 feet per second, Fowler would have had time not only to run across the lane to the north curb, but also to have turned and waved at Robinson when he went by. Obviously, if we accept this separation distance of 150 feet as a dimensional absolute, Fowler could never have been in a position

of immediate danger and thus would not have satisfied the requirement of supplying that element in his humanitarian submission.

Defendant's contention places us in one of the most troublesome areas in the law of evidence. It is the extent to which a party is concluded by his own testimony adverse to his contentions in the litigation. 32A C.J.S. Evidence § 1040(3), p. 776.

■ Certainly, it is clear that a party may preclude himself from disputing an issue by giving clear and unequivocal testimony in the trial of a case on this issue which has the effect of a judicial admission and thereby may deprive himself of the benefit of favorable testimony from others. Hecker v. Schwartz, Mo., 426 S. W.2d 22, 25. As stated in Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747, and adopted with approval in *Hecker*, supra:

"But a party's testimony on the stand as a witness may be of such a nature as to have the effect of a judicial admission which not only relieves the opponent from adducing evidence, but precludes the party himself from disputing it, either by his own testimony or by other witnesses. Wigmore, Evidence, Sec. 2495a (3rd Ed.). Thus, if a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absense of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, whether given by himself, Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S.W. 177, by his adversary's witnesses, Elkin v. St. Louis Public Service Co., 335

Mo. 951, 958, 74 S.W.2d 600, or by his own witnesses. Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618, 621, and cases cited. Where, however, the testimony of a party is not a positive statement of fact within his own knowledge, but is a mere estimate or opinion, it does not have the effect of a judicial admission. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is subject to inexactness of observation and memory. See Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619, a leading case. Thus a party is not conclusively bound by his mere estimate of time, speed or distance, or the position of an automobile or train at the time of an accident. His testimony in regard to such matters does not preclude him from relying upon the more favorable testimony of other witnesses in the case, unless the testimony of the other witnesses is inconsistent with his theory of the case or contrary to physical facts. * * *."

See also: Vaccaro v. Moss, Mo.App., 410 S.W.2d 329, 330[1]; Crockwell v. Oldani, Mo.App., 410 S.W.2d 701, 705[6]; Newell v. Peters, Mo.App., 406 S.W.2d 814, 821[13, 14]; Duffendack v. St. Louis Public Service Co., Mo.App., 365 S.W.2d 52, 53[1–3].

In the instant case, defendant strongly maintains that plaintiff's testimony with regard to seeing the defendant's car 150 feet away was not an estimate but an unequivocal statement of fact. We cannot so construe it. We believe it was an estimate of distance rather than a dimensional absolute which the court had to accept as a judicial admission. Fowler's testimony and the circumstances under which it was presented would indicate the figure was an estimate. He first gave the distance in a narrative statement to which objection was made and sustained. He then admitted the distance in answer to a leading question. On the third occasion, in answer to a direct question on cross-examination, he said, "I seen this car *about* one hundred and fifty feet away, * * *." (Our emphasis). The fourth occasion came in answer to a leading question. Under the circumstances here and considering the context in which it appears, we conclude that plaintiff made an estimate as to the distance of 150 feet. The use of the word "about" in one of his responses indicates his judgment of the distance was an approximation. When a party testifies to a distance as "about" this or that, it is customarily construed as an estimate. State ex rel. Thompson v. Shain, 351 Mo. 530, (en banc), 173 S.W.2d 406, 407[2]; Migneco v. Eckenfels, Mo., 397 S.W.2d 682, 686[7]. Furthermore, plaintiff did not rely on his own judgment as to distance, but introduced as an admission without objection the deposition of defendant, to the effect that when Robinson first saw Fowler he was "maybe" 15 feet from the east end of the island. By so introducing this admission in plaintiff's case in chief, this indicated plaintiff was not relying entirely upon his own estimate of distance. In so introducing this portion of defendant's deposition, we also have a vital distinction between the facts of this case and those in Fisher v. Gunn, Mo., 270 S.W.2d 869, a case relied on by defendant. In *Fisher,* a left-turning plaintiff "concluded" defendant was going 65 to 70 miles per hour. His only witness who testified to speed said that defendant's speed was 60 to 70 miles per hour—closer to 70 than to 60. But defendant estimated his speed at 35 miles per hour. The court held plaintiff could not rely on defendant's estimate of speed. Plaintiff's only speed testimony and defendant's estimate varied so greatly that it foreclosed plaintiff from using defendant's estimate. The court pointed out that the plaintiff made no attempt to adduce in evidence as a part of his case portions of defendant's depositions, nor did he call defendant as a witness to prove defendant's estimate of speed. At no time did plaintiff attempt to incorporate in his case defendant's testimony of low speed.

This is a material distinction between *Fisher* and the case at bar. As stated in *Fisher,* there is no formula which may be evolved by which to determine when and under what circumstances plaintiff may rely upon defendant's evidence in order to make a submissible case. Each case must be decided upon its own facts and circumstances. In the instant case, we find no difficulty in determining that plaintiff could use defendant's estimate as to distance.

The jury could therefore have considered in their deliberations the distance of 15 to 20 feet estimated by defendant to have separated him from the east end of the toll island when Fowler started to run. By adding the maximum estimate of 20 feet to one-half the length of the toll island, the position where Fowler started to run, we arrive at a separation of 38.75 feet between the Robinson automobile and Fowler. At a speed of 20 miles per hour, defendant would have travelled 22 feet of this distance while three-fourths of a second, the presumptive reaction time, elapsed. A distance of 16.75 feet would have remained for defendant to have slowed his car enough so that Fowler might have gained a place of safety on the north curb. At Fowler's fastest running speed he would have traversed the 16 feet 10 inches of pavement in 1.9 seconds. At a speed of 20 miles per hour, Robinson would have taken 1.25 seconds to reach plaintiff. But he said he applied brakes and stopped 10 to 15 feet after the impact. Assuming the shorter distance, he would have consumed a total of 26.75 feet of braking distance to stop after the 22 feet consumed during reaction time. We do not take judicial notice of stopping distance and no estimate is made in the evidence, but we do have evidence that defendant did stop in about 48.-75 feet after seeing plaintiff step out onto the pavement. Furthermore, defendant estimated he was still going the same speed when he struck plaintiff, even though he claimed to have applied his brakes with full force and had 16.75 feet of effective braking distance in which to have slackened speed. Considering the fact that plaintiff testified he was only a foot from the north curb when struck and further that it would have taken Fowler about one-ninth of a second to clear the path of the car, the jury could have inferred that Robinson might have slowed his automobile sufficiently to allow Fowler to escape. Schneider v. Dannegger, Mo.App., 435 S.W.2d 416. Even though the evidence did not sustain a humanitarian submission on failing to stop, it did sustain such a case on failure to slacken speed in this "almost escaping" situation. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 636[11].

Defendant strenuously urges that plaintiff failed to prove he was in a position of immediate danger because he saw the approaching car operated by defendant and knew that it was 150 feet distant. He further maintains that plaintiff could have stopped within a few steps and remained out of the path of the defendant's car. We have previously pointed out that plaintiff's judgment as to distance could be considered an estimate and by such estimate, he was not bound. It is interesting to note that after seeing defendant's car plaintiff must have remained on the island at least during reaction time of three-fourths of a second before running. Further, there is no positive testimony as to how long plaintiff waited after seeing defendant's car before he ran. Defendant's only testimony on this is that he first saw Fowler running in defendant's lane next to the island.

Plaintiff obviously feared that he might be injured by the oncoming eastbound automobile and had a compelling reason to run to the north curb. He had started a definite course on a run which would take him into collision with defendant's vehicle. This had been observed by defendant. Defendant was also aware of the other oncoming vehicle which ran into the west abutment of the toll island. Here the jury could well have determined that plaintiff was in a position of immediate danger when he left the toll island and started his

run across the pavement to the north curb and into the path of defendant's vehicle. Schneider v. Dannegger, Mo.App., supra, 435 S.W.2d 416, 418[2].

Since plaintiff made a submissible humanitarian case on failing to slacken speed, the trial court did not err in overruling defendant's motion for directed verdict.

Defendant finally seeks reversal because the court restricted defendant's counsel in closing argument. In the early part of this argument, counsel attempted to persuade the jury that the negligence of a third person caused plaintiff's injuries. He opened up the matter by stating: "It seems to me the real cause of this accident, the real at-fault person, if you will, is the deceased, Plass—." Upon objection, the court ruled that the argument was improper. The jury was instructed to disregard it. We are now asked to reverse the judgment and remand as to the issue of liability only because of prejudice to the defendant in depriving his counsel of the opportunity to fully and fairly discuss the facts and reasonable inferences therefrom with the jury. But was this portion of the argument a discussion of the facts? We are unable to so consider it.

There was no issue in the case with respect to the negligence of the driver of the third car, Gary Plass. Plaintiff's verdict-directing instruction was MAI (1st Ed.) 17.15, submitting humanitarian negligence in failing to stop or slacken speed. Defendant's humanitarian converse instruction was MAI (1st Ed.) 29.06(3). The evidence did not justify, and therefore no attempt was made by defendant to offer, an instruction conversing causation. Sole cause issues are no longer submissible under MAI since "[t]he negligence of one other than defendant is of no consequence and reference thereto is confusing and misleading." MAI (1st Ed.) 1.03, Committee's Comment.

Even if the act of Plass in driving his automobile at high speed into the abutment of the toll island may have caused Fowler to run, it was not an intervening cause of his injuries, but, at most, would be considered a concurring or contributing cause. To justify submission of the issue of intervening cause by a converse of proximate cause, the act of the third person must break the chain of causation. It must be "a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury * * *." King v. Ellis, Mo., 359 S.W.2d 685, 688[3]; Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, 824[3]. If such an efficient intervening cause is supported by the evidence, it may be submitted in a converse instruction (see MAI (2nd Ed.) 33.05) and argued to the jury. Gathright v. Pendegraft, Mo., 433 S.W.2d 299, 308[12]. In a humanitarian case, however, the cause of plaintiff being in a position of immediate danger is of no consequence. Schrum v. Ciscell, Mo.App., 403 S.W.2d 657, 660[6]. Since the negligence of the driver of the third car was not an issue in this case, the trial judge properly refused to allow any comment on it by defendant's counsel in closing argument. The issue here attempted to be interposed and argued was an issue of law, not fact. In such areas, if the issue attempted to be interposed is contrary to the law, argument must be prohibited by the trial court when objection is made. There is no room for the exercise of discretion by the trial court in such event and a failure to sustain an objection could result in reversible error. Jones v. Gooch, Mo.App., 453 S.W.2d 653, 655[2]. The trial court here properly sustained the objection and committed no error.

We find no error as charged in the trial below and affirm the judgment.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.