[S. F. No. 7127.   Department Two.—March 27, 1917.]

## MIGNON JACOBI et al., Respondents, v. BUILDERS' REALTY COMPANY, Appellant.

NEGLIGENCE — AUTOMATIC ELEVATOR IN APARTMENT HOUSE — EXPERIMENTAL STAGE OF DEVELOPMENT.—The installation and maintenance in an apartment house of an automatic elevator without adequate warning and protection against the perils attending its use by tenants and their guests constitutes negligence, notwithstanding the appliance was as perfect an elevator as could be constructed under the then condition of electrical knowledge and science, for the law does not contemplate that such appliances, in the experimental stage of their development, may be used to the peril of the life and limb of those who may be invited to employ them.

ID.—FALL DOWN ELEVATOR SHAFT—LACK OF CONTRIBUTORY NEGLIGENCE. In an action for the death of a person while attempting to use an automatic elevator in an apartment house, the deceased cannot be charged with contributory negligence in not looking to see if the cage was in place when she opened the door, where it is shown that had the elevator been properly working the door could not have been opened unless the cage was at the door.

ID.—PASSENGER ELEVATOR—PLACE OF SAFETY.—An elevator for the carriage of persons is not, like a railroad crossing at a highway, supposed to be a place of danger to be approached with great caution; but, on the contrary, it may be assumed, when the door is thrown open by an attendant, to be a place which may be safely entered without stopping to look, listen, or make a special examination.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Denson, Cooley & Denson, Stanley Moore, and Geo. K. Ford, for Appellant.

Joseph Bien, and Abram M. Marks, for Respondents.

HENSHAW, J.—Plaintiffs, as heirs at law of Annie Jacobson, deceased, brought their action to recover damages for her death, alleged to have been occasioned through the defendant's negligence.   Trial was had before a jury, which returned its verdict for the defendant.   Plaintiffs moved for a new trial, which motion the court granted.   This appeal is taken from the order so doing.

Appellant urges two propositions: The first, that the court. erred in granting the motion because the evidence conclusively shows that defendant was not negligent; second, that the court erred because the evidence conclusively establishes that the deceased met her death through her own negligence; that the negligence of the deceased was either the sole negligence established in the case, or at the least was contributory negligence, barring the right of recovery.

The unquestioned facts are that the defendant owned and maintained an apartment house in the city and county of San Francisco.   The deceased frequently visited friends residing in this apartment house.   For the use of the tenants, their visitors and guests, the defendant maintained an elevator in this house of a type known as a "full automatic elevator." This elevator was without attendant and was operated exclusively by the passengers.   One desiring to use the elevator stood in front of a closed door opening on the elevator shaft and pressed a button in the door casing.   This pressure made an electrical connection, causing the elevator cage to ascend or descend and stop at the given floor.   Its presence there unlocked the door, which the intending passenger then opened and stepped into the cage; closing the door behind him he pressed a button corresponding to the floor to which he desired to go, and through a second electrical connection thus made the cage moved to the indicated floor.   As it started on its journey the door of the floor from which it was departing again was automatically locked.   The door at any floor could not be opened unless the cage was present at that floor, nor, upon the other hand, would the cage when at a floor move unless the door fronting it was closed.   Such in theory was

the operation of this elevator, and in theory, therefore, it was an extremely safe appliance. In practice, however, it failed to measure up to this. In point of operation it not infrequently happened that the cage would move when a door was opened or on the jar. The evidence in the case went to show that at least a part of this trouble was due to an inherent structural defect in the appliance; that another part of the trouble resulted from the fact that the elevator frequently got out of order and repair, it being in evidence that this occurred as often as once or twice a week.

There was no eye-witness to the immediate circumstances attending the death of Mrs. Jacobson. Mrs. Harris, the housekeeper, who was in the office on the ground floor of the building, saw Mrs. Jacobson pass in front of her toward the elevator. Subsequently she heard a slight scream. Mrs. Jacobson had fallen down the elevator shaft and was found dead in the basement. The elevator cage was several floors above. Touching the absence of negligence on its part, appellant argues that the elevator which it had installed and was maintaining was as perfect an elevator as could be constructed under the then condition of electrical knowledge and science; that it was not an insurer of the safety of the passengers using the elevator, and having furnished the best possible appliance it had completely fulfilled its legal duty, and it is said that "it will certainly not be contended that the use of an automatic elevator is negligence." But the contrary of this is the well-established law. If the apparatus though it be the last achievement of mechanical and scientific skill, is not a suitable appliance to be used in the transportation of passengers, to employ it for that purpose is negligence. The law does not contemplate that such appliances, in the experimental stage of their development, may be used to the peril of the life and limb of those who may be invited to employ them, at least without adequate warning and protection against the perils attending such employment. Specifically, as to this elevator, there was no attendant, nor even any sign to warn a passenger of this defect either in its construction or operation or both. No person using it was informed that a door which was presumed to be tightly locked unless the cage was at its floor could be opened when it was not there. Ignorant of this, persons intending to use the elevator came to rely, and to a certain extent were entitled to rely, upon the

fact that if they could open the door at all it would be because the cage was there.   The evidence leaves no doubt but that this was the precise situation upon the occasion of this fatal accident.   Mrs. Jacobson, familiar with the use of the elevator, in all probability found the door wholly closed or ajar.   It opened to her touch, and assuming by virtue of this fact that the cage was there, she stepped forward and met her death.   Since knowledge of the defects in construction or in operation or both was not only chargeable against this defendant, but was actually possessed by it, it is too plain for discussion that in inviting tenants and their guests to use such a contrivance it was sheer negligence not at the same time to have adequately warned and protected them against dangers necessarily attendant upon the use of the elevator under this defective faulty construction or lack of repair. (*Treadwell* v. *Whittier,* 80 Cal. 574, [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266].)

Under its second proposition appellant contends that the negligence of the deceased is established by virtue of the fact that if on opening the door she had used her eyesight, as she was in duty bound to do, she would have perceived that the cage was not there, and that it was therefore contributory negligence upon her part to have made the fatal step.   We have hereinbefore sufficiently outlined the course of conduct which the deceased doubtless pursued, and also the conditions which prompted her to that course of conduct.   It has thus been made to appear, and indeed the positive evidence is to that effect, that people, using such an elevator and finding that in general practice when such an elevator was operating properly a door could not be opened unless the cage was at that floor, had come to rely, in determining the presence or absence of the cage, upon their ability or inability to open the door.   The deceased unquestionably opened this door or found it open.   In either case (there being no attendant to warn or any other kind of warning given) it was not at least unnatural that she should have placed reliance upon the conditions which she found.   Whether under these circumstances she should also have looked, or be convicted of negligence, presents a question of reasonable argument before a jury, but one which cannot be resolved against plaintiffs as matter of law.   The language of the supreme court of New York is here appropriate: "An elevator for the carriage of persons is not,

like a railroad crossing at a highway, supposed to be a place of danger to be approached with great caution; but, on the contrary, it may be assumed, when the door is thrown open by an attendant, to be a place which may be safely entered without stopping to look, listen, or make a special examination." (*Tousey* v. *Roberts,* 114 N. Y. 312, [11 Am. St. Rep. 656, 21 N. E. 399].)

The order appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.