MARY A. CONNELLY *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., HAINES, HINMAN, BANKS and FOSTER, Js.

The jury in the present case might reasonably have reached the conclusion that the defendant's motorman, who sanded the steps of his trolley car at the commencement of his trip because of an ice storm then in progress, was negligent in not applying more sand before or at the time he reached the center of the city about half an hour later, or in failing to warn the plaintiff, who was leaving the car at that point, of the slippery condition of the step upon which she fell and sustained personal injuries.

When a plaintiff's testimony contains conflicting versions as to the manner in which she was injured, it is peculiarly within the province of the jury to determine which of them is to be accepted as the truth; and the refusal of the trial court to recognize such discrepancies as a ground for setting aside the verdict is entitled to great weight on appeal.

It is not reasonably to be expected that a plaintiff will have a precise recollection of the sequence of events immediately preceding a severe injury accompanied by unconsciousness.

Argued October 26th, 1927—decided January 27th, 1928.

ACTION to recover damages for personal injuries, alleged to have been caused by the defendant's negligence, brought to the Court of Common Pleas for New Haven County and tried to the jury before *Booth, J.;* verdict and judgment for the plaintiff for $1,500, from which the defendant appealed. *No error.*

*Charles A. Watrous* and *Arthur L. Corbin, Jr.,* for the appellant (defendant).

*Albert M. Herrmann,* for the appellee (plaintiff).

Hinman, J. The appeal is from the refusal of the trial court to set aside the verdict. The trolley car upon which the plaintiff was a passenger left Savin Rock at 10.09 a.m. on February 1st, 1926. Shortly thereafter the plaintiff boarded it at Brown Street and Campbell Avenue in West Haven and rode to the corner of Church and Chapel streets in New Haven, the car arriving there at 10.36. At about 9.15 that morning rain, which had previously been falling, changed to sleet, causing ice to form on exposed surfaces, and continued until 11.25 a.m. Before the car left Savin Rock the motorman applied sand to the front steps, but, although a supply was carried in the car, did not sand them again until after the end of the trip, at the Country Club. Neither did he warn passengers leaving the car at Church and Chapel streets of the slippery condition of the steps. As the plaintiff was descending the steps her foot slipped on ice that had formed on one of them, and she fell and was injured.

The jury might fairly have found that under the conditions so obtaining, the degree of care incumbent upon the defendant required that sand be applied to the steps of the car more frequently, and especially before discharging passengers at Church and Chapel streets. It also might have been held, not unreasonably, that it was the duty of the defendant's servants, under the circumstances, to warn passengers of the slippery condition of the steps and of the danger therefrom to which they were to be subjected in leaving the car. *Hinckley* v. *Danbury,* 81 Conn. 241, 243, 70 Atl. 590; *Rosenthal* v. *New York, N. H. & H. R. Co.,* 88 Conn. 65, 69, 89 Atl. 88; 10 Corpus Juris, p. 910.

The appellant further contends that the jury, upon the evidence, could not exculpate the plaintiff from

such contributory negligence as should bar her recovery. To a special interrogatory, "Did the plaintiff look at the step of the trolley car before she started to alight?" the jury gave an affirmative answer, and that they could reasonably have so found from the evidence is not open to serious question. A like answer was made to the further interrogatory, "Did the plaintiff have hold of the grab handle or bar on the trolley car at the time she slipped?" There can be no doubt, upon the evidence, that at some time she grasped this handle; the only question made is whether the jury could fairly have held, as they did as evinced by their answer, that she so grasped it before she slipped, but was unable to hold on with sufficient strength to prevent her fall, or, as the appellant urges, could reasonably have found only that she did not so grasp it until or after the instant when her foot slipped on the icy step. The plaintiff was subjected to repeated questioning on this point, on direct and cross-examination and by the court, and she stated in answer to some of these inquiries that she took hold of the handle when she saw the step was icy, to others that she grasped it when her foot slipped, and once, on redirect, when asked if she had taken hold of the bar before she slipped, replied, "I don't remember now to recall it." Even were the plaintiff's case, in this respect, solely dependent upon her own testimony, it was the proper province of the jury to decide which of the conflicting versions was true and to be accepted. Clark v. Torrington, 79 Conn. 42, 45, 63 Atl. 657. Being able to observe the appearance, mental capacity, and manner of the plaintiff, the degree of embarrassment or confusion under which she labored at various stages of the examination, and other circumstances most helpful to such a determination, the jury's situation was one of such vantage that their conclusion is not readily to be overridden upon the cold

Connelly *v.* Connecticut Co.

type of the printed record, only. Moreover, for the
same reason, the refusal of the trial court to set aside
the verdict, always entitled to great weight, is of espe-
cial significance when conflicting statements in a wit-
ness' testimony are relied upon in support of the mo-
tion. *Lampe* v. *Simpson,* 106 Conn. 356, 358, 138 Atl.
141; *Schroeder* v. *Hartford,* 104 Conn. 334, 337, 132
Atl. 901; *Roma* v. *Thames River Specialties Co.,* 90
Conn. 18, 96 Atl. 169. Another consideration to be
given effect here, as it doubtless was by the jury and
the trial court, is that exact memory is not reasonably
to be expected as to the sequence of events occurring
within a few seconds of time, and immediately fol-
lowed by severe injury accompanied by unconscious-
ness.

However, even if the plaintiff's testimony on this
point were to be disregarded, the jury's conclusion de-
rives adequate support from the testimony of defend-
ant's own witness, the motorman, who was in a posi-
tion to see and remember the occurrences preceding the
plaintiff's fall. On direct examination he testifed: "I
opened both doors, and stood sideways, . . . to see
passengers go out; several of them went out, and this
old lady came; . . . and she got hold of the bar, and
down to the step, released her hold, and she fell." This
evidence, which was not subsequently modified or con-
tradicted, clearly indicates that plaintiff grasped the
grab handle before she stepped down onto the icy step.
The jury, therefore, not only might reasonably have so
found, but would hardly have been justified in reach-
ing a contrary conclusion. This being so, we are not
required to discuss the further question, which other-
wise might arise, as to whether failure on the part of
the plaintiff to take hold of the handle before stepping
down would necessarily have constituted contributory
negligence.

There is no error.

In this opinion HAINES, BANKS and FOSTER, Js., concurred.

WHEELER, C. J. (dissenting). The burden was upon the plaintiff to establish her freedom from contributory negligence. It was freezing weather. A sleet storm was raging which rendered the steps of the trolley car on which the plaintiff was a passenger very slippery. Before she attempted to alight from the car by stepping down upon its step she knew, or should have known, that it was very slippery. Her duty, before stepping down, was to take hold of the handle or grab bar and retain hold of it until she reached the ground. On her direct examination, plaintiff first stated that she had taken hold of the grab bar before stepping down; the next time she testified, on direct examination, upon this subject, she said that when she slipped on the step she then grabbed. the bar. It is evident counsel for defendant purposed by his repeated inquiries to guard against a subsequent claim that the witness was not fully conversant with his questions and with the subject-matter of his inquiries. The record does not indicate the slightest unfairness or harshness toward the witness on the part of the examiner, neither does it indicate that the witness was embarrassed, confused or unduly nervous. At the conclusion of the cross-examination the court examined the plaintiff as follows: "Q. You say now that you didn't look at the step before stepping on it; when did you look at it if at all? A. When my foot slipped, then I looked at the step. Q. As your foot was slipping? A. Yes, sir. Then I grabbed the iron to hold myself from falling all the way down to the street, and there is where the step hit my head and side. Q. You want

Connelly *v.* Connecticut Co.

it left now you did not look at it before you stepped on it, and the only time you looked at it was when you were slipping, is that right? A. Yes, sir." On her re-direct examination her counsel re-examined the plaintiff upon this point: "Q. Now, I would like to know just when you took hold of that iron bar as far as you recall? A. When I went to slip, when my foot went from under me. I tried to hold myself up. Q. Had you taken hold of the iron bar before that time? A. I don't remember now to recall it."

I cannot agree with my brethren that it was for the jury to choose between these conflicting statements. It was for the jury to determine whether the plaintiff had established by a fair preponderance of the evidence that she took hold of the grab bar before stepping down upon the slippery step. I am unable to hold that the jury might reasonably have reached this conclusion upon the plaintiff's testimony. My brethren say that the jury's conclusion derives "adequate support" from the testimony of defendant's witness, the motorman, Simon. He said, "She got hold of the bar, and down to the step, released her hold, and she fell." This statement does not clearly indicate that the witness meant to say that the plaintiff grabbed the bar before stepping down, it also indicates that she released her hold too soon; due care required her to hold on to the bar until she reached the ground. Nothing in this witness' testimony, or in the rest of the testimony, shows that her release of the bar, if she did release it, was due to her slipping. The only other evidence on this point was plaintiff's statement made to the defendant's investigator shortly after the accident. The investigator wrote it down, the daughter of the plaintiff read it to her and she said it was true. This statement, made shortly after the accident, at a time when the plaintiff had, so far as appears, no motive for misstatement,

was, that as she stepped from the platform to the step her feet went from under her and she slipped on the ice on the step, that she tried to grab something, but was unable to do so. It was an admitted fact that plaintiff made this statement, and that upon its being read to her, she said it was true. In my opinion the affirmative answer of the jury to the question, "Did the plaintiff have hold of the grab handle or bar on the trolley car at the time she slipped?" was not justified upon the evidence. Nor was the verdict justified, since the plaintiff had failed to show that she exercised reasonable care in alighting from the car, by taking hold of the grab bar before stepping to the slippery step, and by holding on to it until she reached the ground.

"This plaintiff was obliged to take up and carry the burden of proving not only the alleged negligence of the defendant, but also her own due care, either by direct evidence or by proving 'facts and circumstances' which fairly and reasonably support and justify the inference of negligence on the one hand and of due care on the other; for a jury is never at liberty to guess or surmise the existence of either." *Seabridge* v. *Poli,* 98 Conn. 297, 304, 119 Atl. 214; *Fay* v. *Hartford & Springfield Street Ry. Co.,* 81 Conn. 330, 71 Atl. 64.