[Civ. No. 8847. First Appellate District, Division Two.—September 12, 1933.]

ANNA M. GREGG, Respondent, v. THE MANUFACTURERS BUILDING CORPORATION (a Corporation), Appellant.

148

Hadsell, Sweet & Ingalls and Hadsell, Sweet, Ingalls & Lamb, for Appellant.

W. N. Mullen and Hubbard & Hubbard for Respondent.

THE COURT.—This is an appeal from a judgment for the plaintiff in an action for damages for personal injuries.

On the seventh day of February, 1931, Oliver T. Gregg was employed by the Standard Plating Works, a corporation, at 288 First Street, San Francisco. He had been employed by that company for about four years in the lacquer spraying room on the fourth floor of the annex to the building. On the morning mentioned he died as the result of injuries received at about 8 o'clock when he fell into the elevator shaft. The deceased had been accustomed to take the eleva-

tor to and from his place of employment. He was a married man and left him surviving Anna M. Gregg, his wife. The husband was at the time of his death about forty years of age and the plaintiff forty-one years of age. They were married on the first day of June, 1927. There were no children of the marriage.

At the time of the death of the deceased the defendant, The Manufacturers Building Corporation, was the owner of the building which contained the elevator shaft in which the accident happened. There were in the building two elevator shafts. One was in the front part of the building and in that shaft an elevator was operated for passengers only. In the rear of the building was another elevator shaft which was equipped with automatic devices and at times was used for freight and at other times four of the employees of the Standard Plating Works used that elevator for the purpose of going to and coming from their work. The Manufacturers Building Corporation had a contract with Spencer Elevator Company under which the latter serviced and maintained the elevator last mentioned. That elevator was used by the three tenants and their employees. Jesse Seward, an employee of one of the tenants, was authorized to act as safety man. If the lights in the elevator went out he replaced them; if other repairs became necessary he notified the Spencer Elevator Company and it attended to such repairs. On the morning of the accident and shortly prior thereto the deceased was seen on the first floor passing toward the door of the elevator. Shortly afterwards one of the witnesses saw two hands extended and going down the elevator shaft. Those were the hands of the deceased. The elevator in question was so constructed that the elevator door would not open if the apparatus was in proper working condition when the elevator was not at that floor. When the elevator left any floor going up or coming down, the elevator was so constructed that the doors automatically closed. If the closing was effective the doors could not be opened until the elevator was again brought to that floor. The elevator was equipped with lights and when it was opposite a certain floor the light was visible through the translucent pane of glass located in the outer door. There was also an inner door constructed of lattice work, but it did not greatly obstruct the rays of light. At the time of

the accident the elevator was at the fourth floor. One desiring to use it could do so from the first floor only by manipulating a rope which extended up and down to the left of the elevator door. About sixteen hours before the accident the representative of the Spencer Elevator Company inspected the elevator. After the accident had happened W. J. Cove, the deputy state inspector, and certain other experts, soon went to the building to make another inspection. Immediately after the accident and when the elevator was examined the lights were burning. When the experts were making their examination they examined the apparatus for the purpose of seeing whether the doors locked at the first floor when the elevator was moved. On some tests the doors locked and on some tests they did not. On one occasion they forced the lock to open. Thereafter in making a careful examination they found a burr on the latch tongue of the lock. As to when that burr was created the evidence did not accurately disclose. When the burr was removed the locking device operated properly.

The plaintiff brought this action as the surviving widow of the deceased. It was tried before the court sitting without a jury, and it made findings against the defendant and fixed the damages in the sum of $14,000. The defendant made a motion for a new trial, which was denied and thereupon it appealed from the judgment.

■ The first point made by the defendant is that the judgment was excessive. In this connection it calls to our attention that the plaintiff and deceased were unhappily married; that the plaintiff's husband was cruel to her; that he was not affectionate toward her; that he stated he did not love her; and that for several weeks in the year 1930 he did not live with her. Continuing, the defendant states that the plaintiff commenced an action for a divorce and an interlocutory decree was entered on September 13, 1930. Prior to the entry of the decree the parties entered into a property settlement agreement. The decree was based on the grounds of extreme cruelty and by the terms of the decree the property settlement agreement was approved and made a part of the decree. Prior to the date of the accident no proceeding had been brought in court to set aside the interlocutory decree, but there was testimony that the parties had

been reconciled and were living together as man and wife on the day of the accident. The plaintiff testified over the objection of the defendant that the parties had considered the property settlement as null and void. In reply the plaintiff calls to our attention that during the trial she took the stand as a witness in her own behalf and gave evidence which if the trial court believed it clearly sustained the findings made by the court. In this connection she testified that for several weeks immediately preceding the accident she and the deceased were living together as man and wife. In corroboration of her testimony she also produced the evidence of some of her neighbors who testified to facts tending to corroborate her testimony. In making this point the defendant lays much stress on the property settlement and the fact that no court proceeding had been brought to set it aside. No doubt a court proceeding is one proper method, but it has been held that if the parties become reconciled their mutual obligations are, for the time being at least, restored. (*Gould* v. *Superior Court*, 47 Cal. App. 197, 200, 201 [191 Pac. 56]; *Estate of Boeson*, 201 Cal. 36, 42, 43 [255 Pac. 800].) In short, the evidence on the point was such that the trial court might have found the fact either way; but it may not be said the finding that the plaintiff and deceased had become reconciled is not sustained by the evidence. As a part of this point the defendant also complains of one ruling on the admission of evidence. █ It asserts that the plaintiff should not have been allowed to testify that the husband and wife after the reconciliation considered the property settlement agreement as null and void. That contention is not without merit. However, if we take into consideration all of the other evidence which was properly admitted it is perfectly clear the error complained of is not shown to be prejudicial.

█ The defendant attacks the findings that the instrumentality was a "passenger elevator" and that "defendant did not use the utmost care and diligence of very cautious persons". The attacks as made have no merit. The plaintiff filed a complaint in which she alleged that "the defendant carelessly and negligently failed and neglected to properly keep said elevator and said apparatus for operating the same in order and repair". The defendant filed an answer in which it interposed many denials. It also pleaded

that the decedent was guilty of contributory negligence. No other issues were presented by the pleadings. The trial court made findings on all of the material issues. It also made the findings now attacked by the defendant. But the latter findings are but findings of probative facts. The findings on the ultimate facts support the judgment. Those findings may not be ignored because findings on probative matters were also made. (*Rankin* v. *Newman,* 107 Cal. 602 [40 Pac. 1024, 41 Pac. 304].) As to the exact nature of the instrumentality and how it was used much evidence was introduced. Whether it was a passenger elevator, a freight elevator, or both, was a question of fact addressed to the trier of the facts. (*Wilmarth* v. *Pacific Mut. Life Ins. Co.,* 168 Cal. 536 [143 Pac. 780, Ann. Cas. 1915B, 1120]; 10 Cal. Jur. 211.) During the trial the plaintiff assumed the burden of proof and introduced evidence supporting or tending to support her allegations. The defendant introduced evidence which it claimed showed or tended to show that it exercised the utmost care and diligence of very cautious persons. A conflict arose, and the determination of that conflict rested with the trial court. Examining all of the evidence that was before the trial court we are not inclined to say that court erred in holding the instrumentality was a carrier of persons and that defendant was bound to exercise the utmost care. In *Treadwell* v. *Whittier,* 80 Cal. 574, at page 585 [22 Pac. 266, 269], the court said: "The defendants used their elevator in lifting persons vertically to the height of forty feet. That they were carriers of passengers, and should be treated as such, we have no doubt. The same responsibilities as to care and diligence rested on them as on the carriers of passengers by stagecoach or railway." Then, on page 591, the court said: "The persons running such elevator must be held to undertake to raise such persons safely, as far as human care and foresight will go. The law holds him to the utmost care and diligence of very cautious persons, and responsible for the slightest neglect." In *Springer* v. *Ford,* 189 Ill. 430 [59 N. E. 953, 82 Am. St. Rep. 464, 52 L. R. A. 930], the Supreme Court of Illinois cited and quoted from *Treadwell* v. *Whittier, supra.* Continuing, the court quoted from other cases that the operator of a freight train is bound to exercise the same care for passengers being carried as is exer-

cised by a train that is wholly a passenger train. (See, also, *Fisher* v. *Southern Pac. R. R. Co.*, 89 Cal. 399, 405 [26 Pac. 894].) Thereupon the court ruled that there was no reason, in principle, why the analogy held to exist between passenger and freight trains as common carriers does not exist between passenger and freight elevators, in cases where the owners of freight elevators invite the carriage of passengers thereon for hire and that the proprietor of an elevator run for the use of tenants of an office building is a carrier of passengers for hire. The proprietor's compensation is the rental paid him by the tenant. To the same effect see *Orcutt* v. *Century Bldg. Co.*, 201 Mo. 424 [99 S. W. 1062, 8 L. R. A. (N. S.) 929]; *O'Rourke* v. *Woodward*, 201 Ala. 265 [77 So. 679]; *McKnight* v. *S. S. Kresge Co.*, 285 Pa. 489 [132 Atl. 575]. Our attention has not been called to any authorities to the contrary. *Blanco* v. *Marian Realty Co.*, 204 Cal. 145 [266 Pac. 798], contains nothing to the contrary. In that case the court was considering a so-called sidewalk elevator which was used for freight purposes only and was not a passenger elevator in any sense of the term.

Calling attention to the burr hereinabove mentioned, the defendant asserts that the defect was not discoverable upon careful examination. Much evidence on that subject was introduced. The defendant does not claim any error was made in ruling on the admission or exclusion of evidence. There was some evidence that the door had sagged and the sagging of the door caused the latch in the lock to hit the plate; that in hitting the plate the burr was made on the end of the latch. Clearly it may not be said as a matter of law that these defects could not have been discovered by the exercise of care. It follows that the implied finding against the defendant may not be disturbed.

The next point made by the defendant is that the decedent was guilty of contributory negligence as a matter of law. That is an affirmative defense. As shown above no witness saw anything except two hands going down the shaft. There was not, therefore, any direct evidence that the decedent was or was not guilty of contributory negligence. If we resort to indirect evidence then it must be conceded at once that it will be presumed that decedent used due care for his own safety and secondly it will be presumed he was not guilty of contributory negligence. In the

case of *Jacobi* v. *Builders' Realty Co.*, 174 Cal. 708, at page 710 [164 Pac. 394, L. R. A. 1917E, 696], speaking of a self-locking automatic elevator the court said: "Specifically, as to this elevator, there was no attendant, nor even any sign to warn a passenger of this defect either in its construction or operation or both. No person using it was informed that a door which was presumed to be tightly locked unless the cage was' at its floor could be opened when it was not there. Ignorant of this, persons intending to use the elevator came to rely, and to a certain extent were entitled to rely, upon the fact that if they could open the door at all it would be because the cage was there." And thereafter the court stated as follows: "Under its second proposition appellant contends that the negligence of the deceased is established by virtue of the fact that if on opening the door she had used her eyesight, as she was in duty bound to do, she would have perceived that the cage was not there, and that it was therefore contributory negligence upon her part to have made the fatal step. We have hereinbefore sufficiently outlined the course of conduct which the deceased doubtless pursued, and also the conditions which prompted her to that course of conduct. It has thus been made to appear, and indeed the positive evidence is to that effect, that people, using such an elevator and finding that in general practice when such an elevator was operating properly a door could not be opened unless the cage was at that floor, had come to rely, in determining the presence or absence of the cage, upon their ability or inability to open the door. The deceased unquestionably opened this door or found it open. In either case (there being no attendant to warn or any other kind of warning given) it was not at least unnatural that she should have placed reliance upon the conditions which she found. Whether under these circumstances she should also have looked, or be convicted of negligence, presents a question of reasonable argument before a jury, but one which cannot be resolved against plaintiffs as matter of law. The language of the Supreme Court of New York is here appropriate: 'An elevator for the carriage of persons is not, like a railroad crossing at a highway, supposed to be a place of danger to be approached with great caution; but, on the contrary, it may be assumed, when the door is thrown open by an attendant, to be a place which may

be safely entered without stopping to look, listen, or make a special examination.' (*Tousey* v. *Roberts,* 114 N. Y. 312 [11 Am. St. Rep. 656, 21 N. E. 399].)'' A similar ruling was made as to an elevator having an inside door as well as an outside door and a light within the elevator. (*McKeon* v. *Lissner,* 193 Cal. 297, 304 [223 Pac. 965]; and see *Chambers* v. *Slattery,* 147 Wash. 538 [266 Pac. 185, 57 A. L. R. 959], and notes.)

We find no error in the record. The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 11, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 6, 1933.