[Civ. No. 10605. First Appellate District, Division One.—November 30, 1938.]

JULIA PARKER, Respondent, v. MANCHESTER HOTEL COMPANY (a Corporation), Appellant.

Charles V. Barfield for Appellant.

McCarthy, Richards & Carlson for Respondent.

CONLAN, J., *pro tem.*—Plaintiff commenced this action against the defendants, Manchester Hotel Company, owners of the Claridge Hotel, and Westinghouse Electric Elevator Company, serviceors of the elevators in the Claridge Hotel, for personal injuries which she received when she fell in the lobby of the hotel on May 21, 1936.

The complaint alleged, in part, that on May 21, 1936, and for several years prior thereto, plaintiff was a guest in the Claridge Hotel; that on said day defendants so negligently maintained, regulated and operated said elevator as to cause it to stop with its floor uneven with the floor of the

lobby and that the defendant, Manchester Hotel Company so negligently maintained the floor of the lobby immediately adjacent to the door of said elevator as to cause the same to be slippery and uneven and to be hazardous and unsafe for passengers leaving the elevator; that on the date in question, as the result of the automatic elevator having stopped uneven with the level of the lobby floor, and as a result of the slippery, uneven and unsafe condition of the floor, both of said factors concurring in producing and directly and proximately contributing to this result, plaintiff, while leaving the elevator was caused to slip, trip and to fall to the floor of the lobby, thereby sustaining certain alleged injuries.

The defendants, Manchester Hotel Company and Westinghouse Company, filed separate answers to plaintiff's first amended complaint, wherein each of the defendants denied any negligence and alleged that the plaintiff at the time and place had been guilty of contributory negligence.

The trial court granted the motion of the defendant, Westinghouse Company, for a nonsuit, but denied the motion for nonsuit of the defendant, Manchester Hotel Company. The jury returned a verdict in favor of the plaintiff and against the defendant, Manchester Hotel Company, in the sum of $2,000. Thereafter the trial court denied the motion of the defendant, Manchester Hotel Company for a new trial, whereupon the defendant, Manchester Hotel Company duly filed notice of appeal from the judgment pursuant to the provisions of section 953a of the Code of Civil Procedure.

After alleging negligence against both defendants as above stated, there is an allegation in plaintiff's complaint as follows:

■ "That as a result of said elevator having stopped uneven with the level of said lobby floor as aforesaid and as a result of the slippery, uneven and unsafe condition of said floor as aforesaid, both of said factors concurring in producing and directly and proximately contributing to this result, plaintiff, while leaving said elevator, was caused to slip, trip and fall to the floor of said lobby with great force and violence."

The above allegation sufficiently alleges that each of the alleged acts of negligence was a proximate cause of the injury. It is unnecessary to prove all the allegations of negligence. (*Criss* v. *Angelus Hospital Assn.*, 13 Cal. App. (2d)

412 [56 Pac. (2d) 1274], *Potvin* v. *Pacific Greyhound Lines*, 130 Cal. App. 510 [20 Pac. (2d) 129], and *Froeming* v. *Stockton Electric R. R. Co.*, 171 Cal. 401 [153 Pac. 712, Ann. Cas. 1918B, 408].)

Appellant's contentions are as follows: There is not sufficient evidence that appellant was negligent to sustain the verdict of the jury; that there is no evidence that appellant was negligent in the maintenance and operation of its elevator; that there is no evidence that appellant had notice that the elevator was in a defective condition immediately prior to the accident; that the evidence of alleged negligence in the maintenance and operation of the elevator was insufficient to sustain the jury's verdict; that there is no evidence that appellant negligently maintained the lobby in front of the elevators; that respondent failed to prove either of the alleged concurrent acts of negligence, but in any event respondent could not recover upon proof of only one of such acts under the allegations; that respondent was guilty of contributory negligence as a matter of law; that respondent had such knowledge of the condition of the elevator as would put her on notice of its defective conditions; that if Mrs. Parker had knowledge of the defective condition of the elevator, the question of her contributory negligence should have been decided by the court as a matter of law; that the trial court committed prejudicial error in its instructions to the jury.

Appellant relies upon the following testimony of the respondent, Julia Parker, to show that the respondent was guilty of negligence as a matter of law: "Q. I take it, from what you have told us here a little while ago, that the elevator must have been uneven or you would not have fallen, but you actually did not look to see as you stepped? A. Of course, I would not look to see, no sir. I did not look to see, I never did, carelessness that is what it was, I ought to have done that."

Plaintiff and respondent relied upon the following testimony of Mrs. Parker, the plaintiff, to show that plaintiff had only momentarily forgotten a known danger. Appellant contends that this testimony does not show that plaintiff momentarily forgot, but that she negligently disregarded what she claims to be a known danger. This testimony is as follows: "Q. In times previous to this accident, had you

ever noticed that the elevator did not come quite flush with the floor of the lobby? A. Dozens of times. Q. Dozens of times? A. Yes. Q. You were aware of the fact that it was necessary to gauge your step accordingly, were you not? A. Why, you don't think of such a thing when you are in the elevator. You just— Q. Second nature, you do gauge yourself? A. I expect it was, yes. Q. In accordance with the slight variation between the level of the elevator and the level of the surrounding floor? A. I should expect the elevator to be right. Q. Beg your pardon? A. I should expect it to be right. Q. No, but you had seen it just a trifle up or a trifle down on numerous occasions? A. Oh, lots of times. Q. It had become a habit with you to gauge your step accordingly, when it was off level a little bit, hadn't it? A. In fact, I never thought of it. You never think of such a thing as being off. I never thought of such a thing.''

Appellant further contends the following testimony of the respondent proves that ''Plaintiff failed to prove that the defendant was guilty of negligence as alleged in the complaint.'' ''Q. And did you fall as you stepped out into the lobby? A. I may have taken two or three steps first—I do not know—I know I stumbled. Q. And you lost your balance, did you? A. I lost my balance, yes. Q. Did you feel yourself stepping down or up from the elevator floor? A. Well, I was stepping down, of course, to get to the lobby. Q. Do you know how far off of even or flush the elevator floor was from the lobby floor? A. I was just looking ahead, but it never was very far.''

In the deposition which was introduced into evidence Mrs. Parker testified that the elevator was a little bit higher than the floor; that she could not say whether it was about half an inch, but it was enough to make her fall; that she was not quite certain how much higher; that she fell out of the elevator because it was not flush with the floor, she stumbled on the tile floor, it was the elevator's fault.

Appellant further contends: ''Mrs. Parker's conclusion that the elevator was not on a level with the floor when she stepped out is not entitled to any weight or credence when opposed to the direct testimony of eye-witnesses to the contrary, especially when coupled with her admission that she did not look to see as she stepped out, could not tell how much higher the elevator was than the floor and walked a

distance of six or seven feet before she fell,'' and quotes Mrs. Parker's testimony as follows:

"Q. I take it, from what you have told us here a little while ago, that the elevator must have been uneven or you would not have fallen, but you actually did not look to see as you stepped? A. Of course, I would not look to see, no sir. I did not look to see, I never did, carelessness that is what it was, I ought to have done that.''

Appellant quotes from witness Siddoway's testimony as follows in support of appellant's contention: ''There is no evidence that appellant negligently maintained the lobby in front of the elevator.'' ''Q. Well, when did you last polish this floor before May 21st? A. Probably about a week. Q. You say 'probably about a week'—did you remember that it was a week that you polished the floor before May 21st? A. No, sir. Q. It may have been longer than a week? A. It may have been.''

Appellant makes the further contention that plaintiff had no complaint to make of the cleanliness of the floor and attributed her fall solely to the elevator, and quotes her testimony as follows: ''I fell out of it because that elevator was not flush with the floor. I stumbled on this tile floor. It was the elevator's fault.''

Appellant further contends the ''evidence of alleged negligence in the maintenance and operation of the elevator was insufficient to sustain the jury's verdict'' and quotes respondent's testimony as follows: ''Q. Now, Mrs. Parker, I believe you said that as you walked out of the elevator you just looked straight ahead of you? A. Yes, sir. Q. You did not look down at the floor, or anything like that? A. No. Q. On the occasion of your unfortunate fall, how do you know that the elevator was not even with the floor? A. Because I fell off, that is why I know it. If it had been even, I would not have fell off. Q. In other words, you did not actually see it, but you knew it was always uneven because you fell as you started to step out, is that it? A. Yes, why certainly, what else would make you fall? What would make you fall unless something caused it.''

Appellant further contends: ''In addition to the fact that plaintiff did not look before stepping from the elevator, it further appears that she does not claim that there was any appreciable difference between the level of the elevator floor

and the lobby floor." In this regard appellant also quotes the following testimony of Mrs. Parker: "Q. Do you know how far off of even or flush the elevator floor was from the lobby floor? A. I was just looking ahead, but it never was very far. Q. You mean the floor of the elevator was a little bit higher than the floor of the adjoining floor? A. Yes. Q. About a half an inch, would you say? A. I could not say. It was enough to make me fall, that's all I know. Q. Now, as you walked out of the elevator you say that you may have taken a few steps? A. I might, yes, some, yes. Q. And can you tell us just how many steps you took, Mrs. Parker? A. No. Q. And what is your best recollection as to how many steps you took after you left the elevator before you fell, just your best recollection? Mr. Carlson: Objected to on the ground it has already been asked and answered. She said she cannot say. The Court: She may answer. A. I said I could not remember. Mr. Barfield: Q. Do you think that you moved, walked six or seven feet after you left the elevator? A. Yes. Q. In the lobby, what type of a floor is there? A. Just exactly like glass, exactly like glass. He keeps it polished. You can go and see for yourself—terribly smooth, just like glass. Q. You were aware of the fact that it was necessary to gauge your step accordingly, were you not? A. Why, you don't think of such a thing when you are in the elevator. You just— Q. Second nature, you do gauge yourself? A. I expect it was, yes."

On the taking of her deposition the respondent, Mrs. Parker, testified in part as follows: "Q. Mrs. Parker, did you see anybody get into the elevator and close the door before you fell? A. That lady was going up. I was the only one that came out. She was the only one that went up. Q. This lady did get into the elevator, did she not? A. Yes. Q. She got in before you got— A. (Interrupting.) What? Q. She got in before you fell, did she? A. Yes. Q. Then you were outside of the elevator before you fell? A. I was just stepping out. She had just closed the inside door. I was just stepping out of the elevator when I fell. Q. Was the inside door entirely closed before you fell? A. I don't know."

Mark Siddoway, a witness called on behalf of the plaintiff, testified in substance and in part as follows:

That he was employed by the Claridge Hotel on May 21, 1936; that he was head houseman at that time; that he had to do with the cleaning and taking care of the elevators; that he was familiar with those elevators; that this particular elevator, the east elevator or the elevator nearest the dining room, stopped at various distances from the level of the floors—on the sixth floor—a matter of from two to six inches approximately; that on several different occasions he reported this to the manager of the hotel; that as a matter of fact, a week or ten days previous to that there were elevator men working on the floors; that a matter of ten— a week or ten days before the accident occurred he observed the elevators after these men worked on the elevators; that the same conditions existed in the east elevators after that; that he observed the east elevator the next morning after the accident; that the next morning he got up and got his stick, about eighteen inches long, and took measurements of the elevator, running it up and down several times, taking definite measurements of each floor; that on the main floor, on the observation that he took, it stopped a matter of about four inches above the level of the floor varying on different trips; that it stopped sometimes above and sometimes below —never on level—that as to the type of floor there in the lobby of the hotel it is in a large square with a hard substance of uneven tile arrangement; it is laid off in squares with about nine-inch squares, or eight-inch squares with very close seams—a very close seam, probably three-eighths of an inch; the floor is uneven; that it was his duty to keep the floor in condition; that he kept it clean and polished.

And on cross-examination, Mr. Siddoway testified in substance and in part as follows:

That he left the Claridge Hotel about June 6th; that he did not quit of his own volition; that he had a misunderstanding with Mr. Port and he was discharged; that they used wax and a polishing machine on the terra cotta surface; that he did that himself at times; that he polished the floor at the time; that he polished this floor probably a week before May 21st; that after he got through polishing it, it was not rough; that he reported the unevenness of the elevator to Mr. Swelzy or Mr. Port, the assistant manager; that he believed he did mention it to Mr. Port, the manager

at one time; that he noticed these variations before the date of the accident and they would vary sometimes above and sometimes below the main floor; that these variations occurred in both operations, either up or down; that sometimes it would be a little above and sometimes a little below; that it usually stopped below or above; that when he went to measure it it was about 5 o'clock in the morning the day after the accident and that at that time he found there was a variation above the main floor and that it stopped a little above the main floor; that the largest variation he observed that day was approximately from four to six inches; that at the time he made those tests on the day following the accident there was no one in the elevator but himself.

Mr. A. B. Hendrickson, a guest at the hotel, testified in part as follows:

"Q. And as she fell did she have hold of that door? A. Well, I could not say exactly, but she either had hold of the doorknob or was reaching for it. Q. And was the outer door of the elevator open as she fell? A. Yes sir."

The case of *Haag* v. *Harris,* 4 Cal. (2d) 108 [48 Pac. (2d) 1], answers the contention of appellant that the testimony shows that the appellant was not guilty of negligence in the maintenance of the elevator because appellant had a service contract with the Westinghouse Company by which the elevator company serviced the elevators and made all the necessary repairs and adjustments.

We believe the rule announced in this case (*Haag* v. *Harris, supra*) applies to the evidence in the record and is controlling in the instant case as to the liability of the appellant for the condition of the elevator.

There is no question about the rule in California that the owner of an elevator is responsible for injury occasioned by the slightest neglect which human care and foresight might have guarded, and that, though not insurers of the absolute safety of passengers, they are bound to utmost care and diligence of very cautious persons. (*Gregg* v. *Manufacturers Bldg. Corp.,* 134 Cal. App. 147 [25 Pac. (2d) 1014], and cases therein cited. See, also, *Jacobi* v. *Builders' Realty Co.,* 174 Cal. 708 [164 Pac. 394, L. R. A. 1917E, 696], and *White* v. *Red Mountain Fruit Co.,* 186 Cal. 335 [199 Pac. 318].)

Even if respondent had knowledge of the defective

condition of the elevator, it is still a question for the jury whether she used ordinary care for her own safety.

The case of *Perrault* v. *Emporium Department Store Co.,* 71 Wash. 523 [128 Pac. 1049], cited by the appellant, does not sustain appellant's contention that the respondent in the instant case was guilty of contributory negligence as a matter of law. An examination of the facts in this case shows that the plaintiff "facing her companions within, and attempted to step into the elevator without looking at its floor". The third floor of the store was level, carpeted and adequately lighted. The floor of the elevator was uncarpeted. She says that she did not notice the elevator was lower than the floor, that she thought it was level with the floor until she fell, and that she then looked and observed that it was four or five inches below the surface of the floor, etc. The facts in the Perrault case do not differ much from the facts in the instant case except that in the Perrault case the lady was getting into the elevator and there was an elevator attendant at his post. It was held that the contention that the plaintiff was guilty of negligence as a matter of law could not be sustained. The dissenting opinion quotes certain evidence wherein the plaintiff admits she did not look and paid no attention as to whether the elevator floor was level with the storeroom floor or not. The majority opinion held under the circumstances she was not guilty as a matter of law.

The case of *Williams* v. *Sleepy Hollow Min. Co.,* 37 Colo. 62 [86 Pac. 337, 11 Ann. Cas. 111, 7 L. R. A. (N. S.) 1170], cited by respondent, is not particularly helpful in the instant case except that it declares the general rule, viz.: "It is only when the facts are undisputed and are such that reasonable men can honestly draw but one conclusion from them that the court should consider the question of negligence one of law, and not of fact." (Page 340.) This same rule is recognized in California. The case of *Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal. (2d) 480 [55 Pac. (2d) 870], cited by the respondent, quotes *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529], wherein it is stated: "Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to the injury

. . . in all other cases the question of contributory negligence is a question of fact for the jury.'' (See, also, *Kanopka* v. *Kanopka, infra,* and *Whiteacre* v. *Boston Elevated Ry. Co., infra.*)

Appellant contends that the rule applied in the case of *Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556 [296 Pac. 76], should apply.

There is sufficient evidence in the record to uphold the implied finding of the jury that the defendant hotel company was negligent in the maintenance of the elevator so it is unnecessary to consider the application of the rule announced in *Mautino* v. *Sutter Hospital Assn., supra,* as to respondent's knowledge of the condition of the floor in the lobby of the hotel.

Taking the testimony as a whole most favorable to the respondent, there is sufficient testimony to sustain an implied finding that when the respondent opened the door to step into the lobby, the elevator was at a sufficient height from the level of the lobby floor to cause her to lose her balance; that that lack of control of her balance caused her to fall, and that her loss of balance, caused by the elevator's not stopping at the floor level, caused her to fall regardless of the condition of the floor. There is evidence in the record tending to show that the action of the elevator in stopping at the floors was intermittently faulty, and that periodically, but not all of the time, it did not stop at the floor level. There is a clear conflict in the evidence as to how many feet respondent was away from the door of the elevator or how many steps she took before she fell. While it is true there is abundant evidence upon which reasonable men and women might have concluded respondent was guilty of contributory negligence, the implied finding of the jury was to the contrary.

 The plaintiff is not bound by her own testimony. See *Whicker* v. *Crescent Auto Co., infra,* and cases cited therein; *Kanopka* v. *Kanopka, infra,* and *Whiteacre* v. *Boston Elevated Ry. Co., infra.*

 Appellant complains of the following instruction which was given to the jury:

''The law presumes that the plaintiff and the defendant, and each of them, were free from negligence. Such presumption is a species of evidence, and continues with the respective

parties in this case unless and until overcome by contradictory evidence'', and cites the cases of *Paulsen* v. *McDuffie,* 4 Cal. (2d) 111 [47 Pac. (2d) 709] , *Varner* v. *Skov,* 20 Cal. App. (2d) 232 [67 Pac. (2d) 123], and *Whicker* v. *Crescent Auto Co.,* 20 Cal. App. (2d) 240 [66 Pac. (2d) 749].

It is stated in *Varner* v. *Skov, supra,* as follows: ''It has also been held in a number of cases in this state that under the circumstances thereof the giving of such an instruction, even if erroneous, was not sufficiently prejudicial to justify a reversal.'' In the *Varner* v. *Skov* case the reversal was for other reasons. The *Varner* v. *Skov* case was not reversed on account of the giving of the instruction regarding the presumption and the question of its being prejudicial error although erroneous was not passed upon.

In *Whicker* v. *Crescent Auto, supra,* the case was not reversed. The instruction regarding the presumption was given. The Whicker case involved an injury to an elderly woman who stepped from a safety zone in an attempt to reach the sidewalk. This case states, in part:

''The automobile driven by Vaughn rounded a corner of Powell and Market streets in San Francisco and turned into the latter street at a speed estimated at thirty miles an hour. The distance from this corner to the place where plaintiff was injured was between twenty-five and thirty feet. The plaintiff was struck as she stepped from a safety zone on Market street in an attempt to reach the north sidewalk. Due apparently to the confusion attending such a casualty, her recollection of the precise details of the accident was far from clear; that of Vaughn created a conflict in certain particulars; and the testimony of a third witness to the occurrence differed in some respects from both.

''Vaughn's testimony, though evidenced in the case which the jury might consider, did not of itself destroy the probative weight of the fact presumed, the question whether his testimony proved facts sufficient to overcome the presumption being one for the jury. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529] ; *Tuttle* v. *Crawford,* 8 Cal. (2d) 126 [63 Pac. (2d) 1128].) According to numerous cases it is only where facts are admitted or established by proof (the effect of evidence, Code Civ. Proc., sec. 1824), which are irreconcilable with the presumption that it loses its evi-

dentiary weight. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269]; *Smellie* v. *Southern Pac. Co.*, *supra;* 10 Cal. Jur., Evidence, sec. 64, p. 747.) As held in the Smellie case, the calling of an adverse party under the code section does not have that effect, nor in cases of this character is a party who is merely giving a narration as to how events appeared to him rather than making an admission or testifying to a fact peculiarly within his own knowledge, bound by his own testimony as against circumstantial or other evidence which the jury might fairly believe. (*Kanopka* v. *Kanopka*, 113 Conn. 30 [154 Atl. 144, 80 A. L. R. 619]; *Whiteacre* v. *Boston Elevated Ry. Co.*, 241 Mass. 163 [134 N. E. 640]; *Hill* v. *West End Street Ry. Co.*, 158 Mass. 458 [33 N. E. 582].)"

The case of *Kanopka* v. *Kanopka*, (1931) 113 Conn. 30 154 Atl. 144, 80 A. L. R. 619, holds as follows:

"The practice in this state conforms to the view expressed by Professor Wigmore. A judicial admission may be made by a party as well as by his counsel. If a party, as a witness, unequivocally concedes a fact, such concession, for the purposes of the trial, has the force of a judicial admission, and a party is bound thereby unless the court, in its reasonable discretion, allows the concession to be later withdrawn, explained or modified, if it appears to have been made by improvidence or mistake. (*State* v. *Marx*, 78 Conn. 18, 27 [60 Atl. 690]; *State* v. *Chapman*, 103 Conn. 453, 478 [130 Atl. 899].) Unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, the testimony of a party to a fact is ordinarily no more conclusive upon him than the evidence given by any other witness; and it is the duty of the court or jury to determine the fact, not alone from the testimony given by the party, but from all the evidence in the case. (*Lampe* v. *Simpson*, 106 Conn. 356, 358, 359 [138 Atl. 141]; *Connelly* v. *Connecticut Co.*, 107 Conn. 236, 239 [140 Atl. 121]; *Clark* v. *Torrington*, 79 Conn. 42, 45 [63 Atl. 657].)"

This rule is followed in the case of *Whiteacre* v. *Boston Elevated Ry. Co.*, *supra*. This case is cited with approval in *Kanopka* v. *Kanopka*, *supra*, at page 146 Atlantic.

In the instant case, the testimony of the respondent comes within the rule stated on page 146 of *Kanopka* v. *Kanopka, supra,* which quotes the rule in *Hill* v. *West End St. Ry. Co., supra,* with approval as follows: "There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness. Nor, under the same circumstances, is there any reason why, to prove material facts denied by his own testimony, he may not rely on the testimony of a witness called by the adverse party. . . . In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source. In Missouri, where the doctrine is recognized to some extent, it is held that, if a party, through ignorance, oversight or mistake, makes statements against his interest, which are not true, the jury are not bound to give conclusive effect to such statements."

In our opinion the instruction given in the instant case even if erroneous is not sufficiently prejudicial to justify a reversal. As pointed out by the respondent the instruction applied equally to both parties, and would apply to defendant's benefit to dispel the *res ipsa loquitur* rule. The testimony of the plaintiff, who was 83 years of age at the time of the accident and approximately 84 years of age at the time of the trial, tends to show she was or may have been confused as to just how far she was from the elevator when she fell.

Where confusion may have prevented the plaintiff giving a clear and uncontradictory narrative of the events concerning the accident the rule announced in *Whicker* v. *Crescent Auto Co., supra,* and cases cited therein, with reference to "confusion" would seem to apply.

We find no prejudicial error in the other instructions complained of or in the record warranting a reversal of the case.

The judgment appealed from is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1939.